14 A.3d 658

**MARYLAND STATE POLICE**

v.

**Anthony McLEAN.**

**No. 1462, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Feb. 28, 2011.

Mark H. Bowen (Douglas F. Gansler, Atty. Gen. on the brief), Baltimore, MD, for appellant.

Eric R. Harlan (Paul Mark Sandler, John J. Lovejoy, Shapiro, Sher, Guinot & Sandler, on the brief), Baltimore, MD, for appellee.

Panel: MATRICCIANI, GRAEFF, JAMES A. KENNEY, III, (Retired, Specially Assigned), JJ.

KENNEY, J.

In 2008, Anthony McLean, appellee, applied for a renewal of a permit issued to him by appellant, Maryland State Police ("MSP") to carry a concealed weapon.[1] MSP denied that application on the grounds that appellee had been convicted in 1983 of a misdemeanor that, at the time of the application for renewal, carried a maximum sentence of more than two years, thus disqualifying him, under Md.Code 2003, § 5–133(b)(1)[2] and § 5–101(g)(3)[3] of the Public Safety Article ("PS"), from possessing a regulated firearm. Appellee appealed MSP's denial of the renewal application to the Handgun Review Board ("the Board"), which issued a decision in favor of appellee. MSP sought judicial review in the Circuit Court for Baltimore County, which issued an opinion affirming the decision of the Board. MSP now appeals the decision of the circuit court, presenting one question for our review that we have rephrased as follows:

> For purposes of PS § 5–101(g)(3), is the statutory penalty to be considered the penalty in effect at the time of conviction, or the penalty in effect at the time of the application for a permit or renewal application to carry or otherwise possess a regulated firearm?[4]

---

1. According to MSP's brief, the original permit was issued to appellee in 1982. McLean's brief and his testimony at the hearing before the Handgun Review Board indicate that he first obtained a carry permit in 2001.

2. PS § 5–133(b)(1) provides:
   (b) *Possession of regulated firearm prohibited.*—A person may not possess a regulated firearm if the person:
   (1) has been convicted of a disqualifying crime . . .

3. PS § 5–101(g)(3) provides:
   (g) *Disqualifying crime.*—"Disqualifying crime" means:
   . . .
   (3) a violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years.

4. MSP's question was phrased as follows:

For the following reasons, we are persuaded that the statutory penalty to be considered is the penalty that exists for the crime, or its current equivalent, at the time of the application for a permit or renewal application to carry or otherwise possess a regulated firearm. Accordingly, we shall reverse the judgment of the circuit court which affirmed the ruling of the Board.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1983, appellee, then 19 years old,[5] was convicted of breaking and entering a storehouse, under Art. 27, § 31B of the Maryland Annotated Code (1957, 1982 Repl.Vol.).[6] At the time of his conviction, the maximum sentence of incarceration for that crime was imprisonment of not more than six months. Appellee was sentenced to six months incarceration, suspended, in favor of three years probation.

In 1994, the General Assembly repealed Art. 27 § 31B, and enacted new legislation consolidating the crime of breaking and entering a storehouse with other crimes against property, under the heading "Burglary in the fourth degree." A succinct history of the statutory crime of fourth degree burglary was provided by the Court of Appeals in *McKenzie v. State*, 407 Md. 120, 962 A.2d 998 (2008):

> Did the [Handgun Review] Board improperly fail to look to the current equivalent of [appellee's] 1983 breaking and entering storehouse conviction in determining whether [appellee] is prohibited under State law from possessing a handgun?

5. The parties' briefs both indicate appellee was 18 at the time of his conviction, but according to the renewal application, appellee's date of birth is 7/18/64 and he was convicted on 10/21/83, three months after his 19th birthday.

6. § 31B. Breaking and entering storehouse, etc., of another.
    Any person who breaks and enters a storehouse, shop, storeroom, filling station, garage, trailer, cabin, diner, boat, tobacco house, warehouse, or other outhouse of another in the day or night, shall be guilty of a misdemeanor and, upon conviction, shall be sentenced to imprisonment for not more than 6 months or a fine of not more than $500, or both.

In its first iteration as a statutory offense, burglary in the fourth degree was part of the General Assembly's 1994 codification of what previously were common law burglary and the statutory burglary-related offenses. *See* 1994 Laws of Maryland, ch. 712, § 2. Re-codified without substantive change in 2002 as [Md.Code (2002) § 6–205 of the Criminal Law Article ("Crim. Law")], burglary in the fourth degree embraces four varieties of proscribed behavior.

*Id.* at 124, 962 A.2d 998.

The provisions of Crim. Law § 6–205 are as follows:

**Burglary in the fourth degree.**

(a) Prohibited—Breaking and entering dwelling.—A person may not break and enter the dwelling of another.

(b) Same—*Breaking and entering storehouse.—A person may not break and enter the storehouse of another.*

(c) Same—Being in or on dwelling, storehouse, or environs.—A person, with the intent to commit theft, may not be in or on:

   (1) the dwelling or storehouse of another; or

   (2) a yard, garden, or other area belonging to the dwelling or storehouse of another.

(d) Same—Possession of burglar's tool.—A person may not possess a burglar's tool with the intent to use or allow the use of the burglar's tool in the commission of a violation of this subtitle.

(e) Penalty.—*A person who violates this section is guilty of the misdemeanor of burglary in the fourth degree and on conviction is subject to imprisonment not exceeding 3 years.*

\*      \*      \*

(Emphasis supplied.)

Thus, in addition to recodifying the crime of breaking and entering the storehouse of another as a variety of fourth degree burglary, the legislature increased the statutory penalty for that crime from a maximum of six months to a maximum of three years.

In 1996, the General Assembly enacted the Maryland Gun Violence Act of 1996,[7] presently codified as PS §§ 5–101 *et seq.* Among other changes to the gun control laws, the legislature added to the crimes disqualifying an individual from possessing a regulated firearm "a violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years." PS § 5–101(g)(3). The parties agree that, in the years between 2001 and 2008, MSP renewed appellee's carry permit in addition to issuing to appellee other firearms licenses or permits.[8] It appears that the permit at issue in this case was last renewed in 2005.[9]

In March 2006, in response to a request from the Superintendent of the Maryland State Police, the Maryland Attorney General issued an opinion concerning the application of PS §§ 5–133(b)(1) and 5–101(g)(3). The Attorney General opined that:

> Because firearms law regulates the current possession or reception of a firearm, the determination as to whether a

---

7. 1996 Md. Laws, Chs. 561, 562 (effective October 1, 1996).

8. According to Appellee's brief and his testimony at the Board hearing, MSP issued to him a firearms "collector's license" one month prior to denying his application to renew the carry permit, and also approved his purchase of a handgun the week before his renewal application was denied. It is unclear whether, by "collector's license," appellee is referring to a dealer's license or a temporary transfer permit.

   A dealer's license, issued pursuant to PS § 5–106, is required "before a person engages in the selling, renting, or transferring regulated firearms." An application for a dealer's license requires a statement by the applicant that they have not been convicted of a disqualifying crime. PS § 5–107(b)(4)(iii).

   A temporary transfer permit, issued pursuant to PS § 5–130(c), permits an individual to display a regulated firearm for sale, trade, or transfer at a gun show. An application for a temporary transfer permit requires only "any information that is necessary for the Secretary to conduct a computer background investigation." PS § 5–130(c)

   Before purchasing, renting or transferring a regulated firearm, an individual must submit a firearm application pursuant to PS § 5–117. The applicant must state under penalties of perjury that they have not been convicted of a disqualifying crime. PS § 5–118(b)(3)(ii).

9. Such permits are subject to renewal two years after first being issued and every three years thereafter. PS § 5–309

particular misdemeanor "carries" a penalty in excess of two years should be made with reference to the penalty at the time of possession, if it is different from the potential penalty at the time of conviction.

91 Op. Atty. Gen. Md. 68 (2006) (hereinafter referred to as "the Attorney General's opinion").

On April 7, 2008, appellee applied to MSP for a renewal of his handgun carry permit. Relying on the Attorney General's opinion, MSP denied the renewal application based on Appellee's 1983 conviction for breaking and entering. Because, at the time of the renewal application, the maximum penalty for the offense for which appellant had been convicted exceeded two years, MSP concluded that he had been convicted of a disqualifying crime that prohibited his possession of a regulated firearm.

Appellee appealed MSP's denial of the renewal application to the Handgun Permit Review Board. Following a hearing, the Board issued a written decision which contained as findings of fact that appellee was convicted in 1983 for "Breaking and Entering Storehouse etc." and "at the time of the conviction the penalty was imprisonment for not more than 6 months or a fine of not more than $500 or both." Its legal conclusion was, without explanation, "that the Attorney General's opinion does not apply to this situation." The Board overturned MSP's denial of appellee's renewal application, and directed MSP to "issue [appellee] his handgun permit."

MSP sought judicial review of the Board's decision in the Circuit Court for Baltimore County. The circuit court affirmed the decision of the Board.

## DISCUSSION

MSP contends that the Board erred as a matter of law in failing to apply the current equivalent Maryland offense and its current statutory penalty to appellee's prior conviction when determining, under PS § 5–101(g)(3), whether the conviction disqualifies appellee from possessing a handgun.

Appellee responds that the Board correctly concluded that the "disqualifying crime" provision of the Gun Violence Act of 1996 did not apply to his situation. According to appellee, he was not convicted of fourth degree burglary, but rather, its statutory predecessor, and therefore, the penalties associated with fourth degree burglary cannot be considered when determining if his 1983 conviction for breaking and entering a storehouse disqualifies him from legally possessing a firearm. Appellee further argues that the legislature never intended to make the crime he was convicted of a disqualifying crime under PS § 5–101(g)(3), and that to conclude otherwise would produce an "illogical" and unfair result. Finally, appellee avers that MSP's denial of his renewal application constitutes entrapment by estoppel, and that the rule of lenity should be applied in his favor.

As we shall explain, we conclude that the Board erred as a matter of law in its interpretation of PS § 5–101(g)(3) and the statute's application to the facts of this case.

In *Brown v. Handgun Permit Review Board*, 188 Md.App. 455, 982 A.2d 830 (2009), *cert. denied*, 412 Md. 495, 988 A.2d 1008 (2010), a case that also involved a review of a ruling by the Handgun Review Board, we summarized the standard of appellate review as follows:

> When reviewing the decision of an administrative agency, . . . we review the agency's decision directly, not the decision of the circuit court. A reviewing court will affirm the decision of the [agency] when it is supported by substantial evidence appearing in the record and it is not erroneous as a matter of law. Because an agency's decision is presumed *prima facie* correct, we review the evidence in the light most favorable to the agency. Indeed, it is the agency's province to resolve conflicting evidence and where inconsistent inferences can be drawn from the same evidence it is for the agency to draw the inferences. When we review an agency decision that is a mixed question of law and fact, we apply the substantial evidence test, that is, the same standard of review [we] would apply to an agency factual finding.

**438**

*Id.* at 466–67, 982 A.2d 830 (citations and internal quotation marks omitted.)

    In the present case, there are no relevant factual matters in dispute. The Board's rejection of the Attorney General's opinion is obviously based on its interpretation of PS § 5–101(g)(3). That is a question of law that we review *de novo*. Generally, we give weight to an agency's interpretation of a statute if such interpretation is longstanding and falls within the agency's area of expertise. *Brown*, 188 Md.App. at 467, 982 A.2d 830. But, "when statutory language is unambiguous, administrative constructions, no matter how well entrenched, are not given weight." *Falik v. Prince George's Hosp.*, 322 Md. 409, 416, 588 A.2d 324 (1991). This is because an agency's construction of a statute "cannot override the plain meaning of a statute or extend its provisions beyond the clear import of the language employed." *Id.* (citing *St. Dept. of A. & T. v. Greyhound Comp.*, 271 Md. 575, 589, 320 A.2d 40 (1974)). As we shall explain, we find PS § 5–101(g)(3) to be unambiguous. Therefore, we do not afford weight to the Board's interpretation of the statute.

    Md.Code (2002), Crim. Law § 4–203 generally prohibits persons from wearing, carrying or transporting a handgun on their person or in a vehicle.[10] But, subsection (b)(2) permits "the wearing, carrying or transporting of a handgun by a person to whom a permit to wear, carry or transport the handgun has been issued under Title 5, Subtitle 3 of the Public Safety Article[.]" [11] General qualifications that must be met

---

**10.** Crim. Law § 4–203 provides, in relevant part:
  (a) *Prohibited.*—(1) Except as provided in subsection (b) of this section, a person may not:
    (i) wear, carry or transport a handgun, whether concealed or open, on or about the person; or
    (ii) wear, carry, or knowingly transport a handgun, whether concealed or open, in a vehicle traveling on a road or parking lot generally used by the public, highway, waterway, or airway of the State.

**11.** Md.Code (2002, 2009 supp.), § 4–203(b)(2) of the Criminal Law Article.

for a handgun permit are set forth in PS § 5–306.[12]   In addition, PS § 5–133(b)(1) [13] prohibits possession of a regulated firearm by a person who has been convicted of a disqualifying crime.   Under PS § 5–101(g)(3),[14] the term disqualifying crime includes "a violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years." [15]

---

**12.**   PS § 5–306(a) states:

In general.—Subject to subsection (b) of this section, the Secretary shall issue a permit within a reasonable time to a person who the Secretary finds:

(1) is an adult;

(2)(i) has not been convicted of a felony or of a misdemeanor for which a sentence of imprisonment for more than 1 year has been imposed; or

(ii) if convicted of a crime described in item (i) of this item, has been pardoned or has been granted relief under 18 U.S.C. § 925(c);

(3) has not been convicted of a crime involving the possession, use, or distribution of a controlled dangerous substance;

(4) is not presently an alcoholic, addict, or habitual user of a controlled dangerous substance unless the habitual use of the controlled dangerous substance is under legitimate medical direction; and

(5) based on an investigation:

(i) has not exhibited a propensity for violence or instability that may reasonably render the person's possession of a handgun a danger to the person or to another; and

(ii) has good and substantial reason to wear, carry, or transport a handgun, such as a finding that the permit is necessary as a reasonable precaution against apprehended danger.

**13.**   PS § 5–133(b)(1) provides:

(b) Possession of regulated firearm prohibited.—A person may not possess a regulated firearm if the person:

(1) has been convicted of a disqualifying crime.

**14.**   PS § 5–101(g)(3) provides:

(g) *Disqualifying crime.*—"Disqualifying crime" means:

(1) a crime of violence;

(2) a violation classified as a felony in the State; or

(3) a violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years.

**15.**   We note, as we did in *Brown v. Handgun Permit Review Board,* 188 Md.App. 455, 470, 982 A.2d 830 (2009), that there is a "discrepancy" between the statutory definition of "disqualifying crime" in PS § 5–101(g) and the disqualifying convictions described in PS § 5–306. Under PS § 5–306(a)(2) and (3), an individual may not qualify for a handgun permit if the individual has been convicted of "a felony or . . .

■ Statutory interpretation is guided by the following principles:

> Our predominant mission is to ascertain and implement the legislative intent, which is to be derived, if possible, from the language of the statute (or Rule) itself. If the language is clear and unambiguous, our search for legislative intent ends and we apply the language as written and in a commonsense manner. We do not add words or ignore those that are there. If there is any ambiguity, we may then seek to fathom the legislative intent by looking at legislative history and applying the most relevant of the various canons that courts have created.

*Downes v. Downes,* 388 Md. 561, 571, 880 A.2d 343 (2005).

■ In our view, the language of PS § 5–101(g)(3), read together with PS § 5–133(b)(1) is clear and unambiguous with respect to the issue presented in this case: a person who has been convicted of a violation classified as a misdemeanor in the State that *carries* a statutory penalty of more than two years may not possess a regulated firearm. The word "carries" expresses the present tense—i.e., that the statutory penalty to be considered is the penalty in effect at the time that qualification is being considered. If it was the intent of the legislature to exempt from the provisions of § 5–101(g)(3) an individual who was legally permitted to possess or carry a handgun prior to October 1, 1996 when the law took effect, it is reasonable to presume that the legislature would have used operative language to express that intent. For example, "disqualifying crime" could have been defined in PS § 5–101(g)(3) as a misdemeanor that, *at the time of conviction, carried* a statutory penalty of more than two years. Alterna-

---

misdemeanor for which a sentence of imprisonment for more than 1 year has been imposed," or "a crime involving the possession, use or distribution of a controlled dangerous substance," neither of which applies to McLean. As we explained in *Brown,* it would produce an absurd result to construe PS § 5–306(a) to require the issuance of a handgun permit to a person who is statutorily ineligible to possess a handgun. *Id.* at 471, 982 A.2d 830. Appellee does not contend otherwise.

tively, the legislature could have included a "grandfather clause" exempting individuals who were legally permitted to possess a regulated firearm prior to the enactment of the new law. Nothing in the language of the statute evidences such an intent, and it is not the function of this Court to supply one by interpretation. *See Pappas v. Pappas,* 287 Md. 455, 465, 413 A.2d 549 (1980) ("A court may not under the guise of interpretation insert or omit words to make a statute express an intention not evidenced in its original form.") *See also, Fisher v. State,* 367 Md. 218, 292, 786 A.2d 706 (2001) (courts may not "supply missing language when there is a *casus omissus* in the legislative scheme by judicially creating a statutory provision that the legislature would probably have added if it had given any thought to the problem it had not addressed.") [16]

Even if we were persuaded to accept appellee's argument that the statutory language is "inexact and imprecise," and, thus, ambiguous, an examination of the legislative history reveals nothing that contradicts our reading of the plain language of the statute. The legislative history indicates that adding misdemeanors carrying a maximum sentence in excess of two years to the list of disqualifying crimes was to bring Maryland law in line with federal law [17] and to further restrict individuals who had been convicted of crimes from lawfully possessing regulated firearms.

The introductory paragraph of the Gun Violence Act of 1996, which was introduced in the legislature as companion bills Senate Bill 215 and House Bill 297, states, *inter alia,* that the purpose was ". . . revising, reorganizing, and clarifying certain laws pertaining to the sale, rental, or transfer of

---

**16.** We also note that the legislature could have granted the Board discretion in regard to the laws regulating possession of a handgun under certain circumstances, however, we see nothing in the section of the code governing the Board that authorizes such discretion. *See* PS § 5–302 *et seq.* Although the Board has authority in regard to qualifications for a handgun permit and can overrule a decision to deny a permit or renewal permit, we do not see where the Board is free to disregard PS § 5–101(g)(3). *See* PS § 5–306.

**17.** 18 U.S.C., Section 921(a)(20)

certain regulated firearms by certain individuals;" and *"providing that certain sales, transfers, and possessions of firearms prohibited under federal law are prohibited under State law* . . . ." (Emphasis supplied.)

Similarly, the Fiscal Note to House Bill 297, prepared by the Department of Fiscal Services, analyzing the fiscal impact of the proposed changes on the State and local governments, states, in relevant part: "This administrative bill . . . expands penalties for use and possession of a regulated firearm to *include more offenses* . . . ." (Emphasis supplied.)

The report of the Governor's Commission on Gun Violence,[18] upon which, according to the Attorney General's opinion, the 1996 amendments were "largely based," [19] recommended that Maryland "[i]ncorporate federal law 'reasons to deny a handgun' into State law." As the Commission explained:

> Under federal law, if a person is convicted of any misdemeanor that carries more than a two year term of imprisonment, they are prohibited from owning a firearm. There are approximately 90 misdemeanors in the State of Maryland that trigger this prohibition. Once an individual is convicted of such a misdemeanor, under federal law, she or he may no longer purchase or possess a firearm.

*Id.* at 20.

In sum, it appears that the motivating rationale for adding certain misdemeanors, including fourth degree burglary, to the list of disqualifying crimes was to mirror federal law and expand the number of disqualifying crimes. Nothing in the legislative history suggests an intent to exempt from the amendment an individual who was legally permitted to possess or carry a gun prior to October 1, 1996 when the law took effect. Additionally, we see nothing in the statute or legislative history that eclipses the plain meaning of the word "carries" and suggests that the penalty to be considered is the

---

**18.** Governor's Commission on Gun Violence, Comprehensive Reform for a Safer Maryland (November 1, 1995)

**19.** 91 Op. Att'y Gen. at 74

penalty that existed at the time of the conviction rather than the penalty in effect at the time of the application for a permit for a regulated firearm.

Nor are we persuaded by appellee's argument that the penalties associated with fourth degree burglary should not apply to his situation because he was not convicted of that crime. He asserts that because the crime of which he was convicted is now categorized along with other crimes that already carried a more serious maximum penalty, it is "entirely inappropriate" to equate his 1983 offense with the offense of burglary in the fourth degree and its penalties.

Contrary to appellee's assertion that the current statutory scheme for burglary offenses "bears no resemblance to what was on the books a quarter century ago," fourth degree burglary does not differ substantively from the statutory crime of which appellee was convicted. *See McKenzie, supra. See also, Comptroller v. Blanton,* 390 Md. 528, 538, 890 A.2d 279 (2006) (recodification of statutes is presumed to be for the purpose of clarity rather than change of meaning unless there is a radical change in phraseology.) Article 27, § 31B of the Maryland Code, under which appellee was convicted in 1983, provided that "any person who breaks and enters a storehouse . . . of another . . . shall be guilty of a misdemeanor." Crim. Law § 6–205(b), the current equivalent, provides that "[a] person may not break and enter the storehouse of another." The elements of the crime did not change in the recodification. The only substantive change was the increase in the maximum penalty.[20]

---

**20.** A review of the legislative history reveals the purpose of the repeal of Article 27, § 31 B and the concurrent enactment of the fourth degree burglary statute was to restructure the burglary laws and increase the penalty for certain burglary crimes. The Fiscal Notes to both Senate Bill 322, and its counterpart, House Bill 471, state, in relevant part:

This bill repeals all current statutory provisions relating to burglary and creates a new statutory structure for burglary offenses.
State Impact: No effect. While these revisions do include some redefinitions of existing crimes *resulting in stiffer maximum sentences,* the Division of Correction believes that the net effect of the changes

The fact that storehouse breaking carried the least serious penalty among the crimes consolidated into the fourth degree burglary statute in 1994 in no way suggests, as appellee posits, that the legislature did not intend to make breaking and entering a storehouse a disqualifying crime in 1996. What is relevant, as it pertains to the application of § 5–101(g)(3), is that the General Assembly, in 1994, for reasons unexplained in the legislative history, expressly increased the statutory penalty for breaking and entering a storehouse from a maximum of six months to a maximum of three years. Presumably the General Assembly was aware of that legislation when it expanded the category of disqualifying crime to any misdemeanor "that carries a statutory penalty of more than 2 years."

Appellee also urges that if the stated purpose of the Maryland Gun Violence Act of 1996 was to keep firearms out of the hands of those with an established propensity for serious lawbreaking, applying a literal interpretation to PS § 5–101(g)(3) leads to an "illogical result" because the "legislature does not consider [his] possession of a handgun a threat to public safety." In support of that statement, appellee again points to the fact that the crime of breaking and entering a storehouse was the least serious offense (in terms of its statutory penalty) among the crimes consolidated into the fourth degree burglary statute in 1994.

While the intent of handgun control laws enacted in 1941 may have been "to prevent those who have already demonstrated a propensity for violence, as evidenced by a conviction of a crime of violence, from possessing handguns[,]" [21] it does not necessarily follow that that was the overriding consideration in the adoption of the 1996 amendments over half a century later. As discussed, the legislature's stated intent at that time was to bring Maryland law in line with federal law by adding certain misdemeanors to the list of disqualifying

---

    will not add to the prison population and can be handled with existing budgeted resources.
    (Emphasis supplied.)

**21.** *Johnson v. State,* 67 Md.App. 347, 378, 507 A.2d 1134 (1986)

crimes as a separate subcategory *in addition to* crimes of violence (PS § 5–101(g)(1)), and felonies (PS § 5–101(g)(2)). The General Assembly did so apparently without regard to the propensity for violence or what might be considered serious lawbreaking reflected in the constituent elements of each included offense.  For example, the crimes of breaking and entering a motor vehicle [22] and indecent exposure [23] are now disqualifying crimes.

What is clear is that in 1994 the legislature deemed it appropriate, in the exercise of its legislative prerogative, to increase the statutory penalty for the crime of breaking and entering a storehouse to a maximum of three years.  Two years later, the legislature deemed it appropriate to add misdemeanors carrying a sentence of more than two years imprisonment to the list of crimes disqualifying an individual for possessing a regulated firearm.  The fourth degree burglary statute, which included "storehouse breaking" was in effect when it did so.  Therefore, it is reasonable to conclude that the legislature intended to make "storehouse breaking" a disqualifying crime under PS § 5–101(g)(3).

We recognize that interpreting PS § 5–101(g)(3) as we do may seem harsh in this particular situation—as it results in the non-renewal of appellee's permit to carry a handgun, where there is no indication that he has abused the right provided to him by that permit, or for that matter, any firearms permit, in any way.  From the record in this case, there is no reason not to believe that appellee is generally a law abiding citizen and that his conviction at age 19 was the product of a youthful indiscretion.  But, in light of the overall statutory scheme, that does not necessarily render the interpretation illogical, unreasonable or inconsistent with common sense, as urged by appellee.

Arguably, ignoring the plain language of the statute, and agreeing with appellee that the statutory penalty to be consid-

---

**22.**  Crim. Law § 6–206

**23.**  Crim. Law § 11–107

ered is the penalty existing at the time of his 1983 conviction, would lead to situations in the administration of the statute that could also be considered illogical, unreasonable or inconsistent with common sense. For example, an individual committing a disqualifying crime after an increase in the statutory penalty would not be permitted to possess a regulated firearm, while an individual committing the same crime before the penalty was increased would be permitted to possess a handgun.

Appellee's argument that "only storehouse breakers who committed that offense since 1994 can possibly be considered offenders with a 'propensity for serious lawbreaking' " is, in our view, fundamentally flawed. As a general rule, a legislature's attitude toward the relative seriousness of any particular criminal conduct and the need to discourage it is reflected in the imposed penalty. It follows that the increase in the penalty for "storehouse breaking" reflects a belief that "storehouse breaking" is a serious enough offense to warrant a substantially increased penalty. There is no reason to believe that the legislature was focused on when the act occurred, rather than the nature of the criminal conduct itself, in increasing the penalty. Moreover, the blanket inclusion of all misdemeanors carrying "a statutory penalty of more than 2 years" as disqualifying crimes indicated that the sentence represented a measure to judge the disqualifying nature of the offense.

■ Appellee additionally asserts that, because MSP issued and subsequently renewed his handgun carry permit and approved other firearms transactions after the Maryland Gun Violence Act took effect, it would be "fundamentally unfair" at this point to apply the statute differently, as he would then be exposed to "seizure of his property and to criminal liability." MSP contends that its denial of appellee's renewal application is not an unfair change in the application of the statute, but guided by the Attorney General's opinion, simply an effort to apply the law correctly and as it should have been in the past. The fact that MSP apparently approved other firearms trans-

actions even after the Attorney General's opinion was issued did not preclude correct application of the statute when this permit came up for renewal. Nothing in the record reflects an effort by MSP to void any existing permits and, even if that were the case, there is no reason to believe that appellee would not be given reasonable consideration for the transfer of any regulated firearms in his possession before being subject to any criminal liability.[24]

■ Nor is it "fundamentally unfair" that appellee's conviction did not disqualify him from owning a gun until years after his conviction. As the Court of Appeals recently observed, gun ownership is not an unconditional right. *Williams v. State*, 417 Md. 479, 491–92, 10 A.3d 1167 (2011). Certain governmental regulations on the possession of firearms are permissible. *See District of Columbia v. Heller*, 554 U.S. 570, 626–27, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). Appellee has not argued otherwise. As the Attorney General's opinion argued, a legislative act to make a conviction that was once not a disqualification into one that is, is "no different than if the Legislature chose to add a new category of offenses to the list of disqualifying crimes—as it did when it added misdemeanors to the class of disqualifying crimes—or otherwise to expand the categories of disqualifications." 91 Op. Att'y Gen. at 79.

We think that the underlying rationale in *Brown, supra,* is applicable here. In *Brown*, MSP denied Brown's application to carry a concealed weapon based on his 1984 conviction in the District of Columbia for possession of a dangerous weapon—which at the time of conviction (as well as at the time the appeal was filed) carried a maximum sentence of imprisonment of up to one year. MSP denied the application, reasoning that the equivalent crime in Maryland—that of wearing or carrying a dangerous weapon, a misdemeanor carrying a

---

**24.** We do not address appellee's assertion of entrapment by estoppel as there has been no effort on the part of MSP to prosecute for violation of firearms laws. Similarly, we do not address the application of the rule of lenity as the statute in question is not a penal statute, nor is it ambiguous.

statutory penalty of imprisonment up to three years—was a "disqualifying crime" within the meaning of PS § 5–101(g)(3). MSP relied, as it does in the present case, on the Attorney General's opinion. Addressing the issue of out-of-state convictions, the Attorney General opined that "when MSP applies PS § 5–101(g)(3), the agency should examine the equivalent Maryland offense that exists at present (rather than the equivalent extant at the time of conviction)." *Brown,* 188 Md.App. at 464, 982 A.2d 830. The Board affirmed MSP's denial of Brown's handgun carry permit, and the case was eventually appealed to this Court to review the Board's ruling.

We rejected Brown's argument that the question of whether an out-of-state conviction is a disqualifying crime under PS § 5–101(g)(3) should be determined by looking to the maximum punishment for the offense in the convicting jurisdiction, not the punishment applicable under the equivalent Maryland offenses.

We concluded that, in the case of an out-of-state conviction, an ambiguity arose with respect to which state's penalty should be considered.[25] *Id.* at 473, 982 A.2d 830. After reviewing the legislative history of PS § 5–101(g)(3), *id.* at 474–479, 982 A.2d 830, we concluded that the General Assembly intended for PS § 5–101(g)(3) to be interpreted such that the conviction's potential punishment is measured by reference to the penalty under the law of Maryland for a comparable violation. We explained:

[I]t would have been most rational for the General Assembly to use Maryland law as the reference point for the

---

**25.** Under the facts of *Brown,* the language "a violation classified as a misdemeanor in the State that carries a statutory penalty of more than two years[ ]" could be construed in one of several ways: (1) to refer only to Maryland convictions; (2) to include out-of-State offenses that would be classified as misdemeanors in Maryland that carry a penalty in excess of two years under the law of the state of conviction; or (3) to include out-of-State offenses that would be classified as misdemeanors in Maryland that carry a sentence in excess of two years if committed in Maryland, regardless of the sentence that the other state imposed. *Id.* at 473–74, 982 A.2d 830. The Court in *Brown* concluded that the latter interpretation was correct. *Id.* at 480, 982 A.2d 830.

following reasons. First, it ensures that the General Assembly's judgment as to criminal propensity prevails over the judgment of other states' legislatures. . . . Second, the use of Maryland law as the standard for disqualification makes equal the treatment by this State of all persons convicted of similar criminal conduct, whether the criminal conduct occurred in Maryland or elsewhere.

*Id.* at 480–81, 982 A.2d 830 (citations omitted).

We did not consider in *Brown* the issue presented here—whether to consider the penalty for the offense at the time of the conviction or the penalty for the equivalent Maryland offense in effect at the time the person convicted seeks to possess a regulated firearm—because in *Brown* the penalty for the Maryland offense had not changed since his conviction.

As we explained in *Brown*, the firearms laws are intended to regulate the current or present possession of regulated firearms. Looking to current Maryland law and the penalties currently in force promotes consistency and equality in the treatment of all persons convicted of the same criminal conduct regardless of *where or when* the criminal conduct occurred.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR THE ENTRY OF AN ORDER REVERSING THE DECISION OF THE HANDGUN REVIEW BOARD.**

**COSTS TO BE PAID BY APPELLEE.**