*In the Matter of Mark McCloy*, Case No. 673, September Term 2022. Opinion filed on May 1, 2023, by Berger, J.

DISQUALIFYING CRIME – STATUTORY INTERPRETATION – QUESTION OF LAW – DE NOVO STANDARD OF REVIEW

Under Maryland's firearms regulations, the determination of whether an out-of-state conviction constitutes a "disqualifying crime" under Section 5-101(g) of Maryland's Public Safety Article is a matter of statutory interpretation, and, therefore, it is a question of law reviewed *de novo*.

DISQUALIFYING CRIME – OUT-OF-STATE CONVICTION – EQUIVALENCE TO MARYLAND STATUTE

Under Maryland's firearms regulations, an out-of-state conviction is a "disqualifying crime" that prohibits an applicant from obtaining a handgun qualification license if the Maryland State Police determine that the foreign statute providing the basis for the out-of-state conviction is equivalent to a Maryland misdemeanor statute with a penalty in excess of two years' imprisonment.

DISQUALIFYING CRIME – OUT-OF-STATE CONVICTION – TIMING OF COMPARISON

When assessing whether an out-of-state conviction is a "disqualifying crime," the foreign statute providing the basis for the out-of-state conviction must be compared to the purportedly equivalent Maryland statute as it existed at the time of the application, not as it existed at the time of the out-of-state conviction. If the Maryland statute did not exist at the time of the out-of-state conviction, that does not preclude a finding of equivalency. What controls is whether the Maryland statute, at the time of the application, is a misdemeanor with a maximum penalty of more than two years' imprisonment.

DISQUALIFYING CRIME – EQUIVALENCY DETERMINATION

To affirm the Maryland State Police's determination that an out-of-state-conviction is equivalent to a Maryland misdemeanor statute with a penalty in excess of two years' imprisonment such that the out-of-state conviction is a "disqualifying crime" prohibiting an applicant from obtaining a handgun qualification permit, a reviewing court must conclude that a reasonable mind could find (1) that the statutes prohibit similar conduct, based on the comparison of the elements of each statute, and (2) that the conduct producing the out-of-state conviction would be prohibited by the purportedly comparable Maryland statute.

REVIEW OF ADMINISTRATIVE AGENCY DECISION – MODIFIYING AND AFFIRMING AGENCY DECISION

When reviewing an administrative law judge's ("ALJ") findings, if a circuit court reaches the same conclusion as the ALJ, but does so on different grounds than the ALJ, then the circuit court may modify the ALJ's decision while affirming the ALJ's conclusion.

ESTOPPEL – ENFORCEMENT OF REGULATORY MEASURES

The prior approval of a handgun qualification license ("HQL") does not estop the Maryland State Police ("MSP") from denying a subsequent HQL application from the same applicant, despite no substantive changes to the applicant's criminal record between the submission of each application. The MSP's failure to properly assess an applicant's prior criminal conviction as a disqualifying crime does not preclude the agency from making such a determination upon a subsequent HQL application.

EX POST FACTO – EQUIVALENCY DETERMINATION – REGULATORY PROVISIONS

The determination that an out-of-state conviction is equivalent to a comparable Maryland criminal statute, not in existence at the time of the out-of-state conviction, such that the out-of-state conviction is a "disqualifying crime" under Maryland's firearms regulations, does not violate the *ex post facto* prohibitions of the United States and Maryland constitutions. The firearms regulations are civil in character and prohibit current possession of firearms; therefore, they are distinct from retroactive criminal prohibitions of prior conduct.

DUE PROCESS – COLLATERAL CONSEQUENCES OF PRIOR CONVICTION

A defendant failing to receive notice that, as a consequence of his entering of a guilty plea in a foreign jurisdiction, he may be precluded from exercising his constitutional right to bear arms, does not preclude the Maryland State Police from denying the defendant's application for a handgun qualification license.

Circuit Court for Queen Anne's County
Case No. C-17-CV-21-000138

REPORTED

IN THE APPELLATE COURT

OF MARYLAND*

No. 673

September Term, 2022

_____

IN THE MATTER OF MARK McCLOY

_____

Wells, C.J.,
Berger,
Albright,

JJ.

_____

Opinion by Berger, J.

_____

Filed:  May 1, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

*At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland.  The name change took effect on December 14, 2022.

This appeal arises from Appellee's, the Maryland State Police ("the MSP"), denial of Appellant Mark McCloy's ("McCloy") application to purchase a handgun. The MSP determined that McCloy's 1999 conviction under a federal witness tampering statute qualified as a "disqualifying crime" that prohibited him from possessing a regulated firearm under Maryland law. The Office of Administrative Hearings ("the OAH") reviewed the decision, and an administrative law judge ("ALJ") affirmed the denial of the application. McCloy sought judicial review in the Circuit Court for Queen Anne's County. The circuit court affirmed the ALJ's decision, but on different grounds. This appeal followed.

McCloy presents four questions for our review, which we rephrase into two questions, as follows:[1]

---

[1] McCloy presents the following questions, verbatim, for our review:

> 1. Whether the Circuit Court committed errors of law, abused its discretion, or violated the constitutional rights of the Appellant when it found that the version of 18 U.S.C. § 1512(c)(1) in effect in 1999 is equivalent to [Section 9-305 of Maryland's Criminal Law Article], when it failed to conduct any comparative analysis of the elements of the two offenses?
>
> 2. Whether it is violative of the [United States] and Maryland Constitutions to deny Appellant the purchase of a regulated firearm on the basis of the current penalty for an offense he was not convicted of, and for which the agency has previously and repeatedly determined is not equivalent to the convicted offense?
>
> 3. Whether the Office of Administrative Hearings' Decision and Order are arbitrary and capricious and

I. Whether the circuit court erred in affirming the MSP's denial of McCloy's application to purchase a regulated firearm.

II. Whether the circuit court erred in determining that McCloy was not entitled to equitable relief from the denial of his application to purchase a regulated firearm.

For the reasons explained herein, we answer both of these questions in the negative. We, therefore, affirm the circuit court's ruling that the MSP correctly denied McCloy's application.

## FACTS AND PROCEDURAL HISTORY

### *Maryland's Handgun Regulation and Application Process*

A "handgun qualification license" ("HQL") is "a license issued by [the MSP] that authorizes a person to purchase, rent, or receive a handgun." Md. Code (2003, 2022 Repl.) § 5-101(o) of the Public Safety Article ("PS"). A person must submit, and have approved, an application for an HQL before purchasing, renting, or transferring a regulated firearm. *Id.* § 5-117. The application shall contain a statement from the applicant, made under penalty of perjury, that the applicant has never been convicted of a "disqualifying crime," or of a common law crime resulting in imprisonment for more than two years. *Id.* § 5-118(b)(3). Upon the receipt of the application, the Secretary of the MSP must promptly

lack the support of competent, material, and substantial evidence?

4. Whether the Office of Administrative Hearings violated the principles of lenity, estoppel, and *Ex Post Facto*?

2

investigate "the truth or falsity of the information supplied" and determine whether the applicant may purchase a regulated firearm. *Id.* § 5-121(a); Md. Code Regs. ("COMAR") 29.03.01.18(A).

"[A] person may not possess a regulated firearm if the person has been convicted of a disqualifying crime." PS § 5-133(b)(1). "[A] '[d]isqualifying crime' means: (1) a crime of violence; (2) a violation classified as a felony in the State; or (3) a violation classified as a misdemeanor in the State that carries a statutory penalty of more than [two] years." *Id.* § 5-101(g). The MSP, as the agency tasked with reviewing HQL applications, "may properly deny a handgun permit to anyone who has [been determined to have committed] a disqualifying crime under PS § 5–101(g) and is [thereby] prohibited from possessing a handgun under PS § 5-133(b)(1)." *Brown v. Handgun Permit Rev. Bd.*, 188 Md. App. 455, 471 (2009).

### McCloy's 1999 Federal Conviction

While working as a government employee in 1999, McCloy and a fellow employee engaged in sex at McCloy's home in Chester, Maryland. McCloy gave the fellow employee $200. Shortly thereafter, the woman filed a complaint against McCloy with the Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment. The fellow employee later called McCloy and offered to dismiss her complaint in exchange for McCloy paying her $5,000. McCloy advised the fellow employee that McCloy could not afford that amount, but he counteroffered $1,000 for the employee to dismiss the

3

complaint, to which she agreed.[2]

Unbeknownst to McCloy, Federal Bureau of Investigation ("F.B.I.") agents taped the call. Additionally, another employee who worked in close physical proximity to McCloy overheard the call. Thereafter, McCloy asked that employee not to disclose or discuss what he had heard. McCloy was ultimately arrested. He pleaded guilty in the United States District Court for the District of Columbia to witness tampering, in violation of 18 U.S.C. § 1512(c)(1).[3] McCloy was sentenced to six months of home detention followed by a five-year period of probation.

*McCloy's Gun Permit Applications*

In 2015, McCloy submitted an HQL application to the MSP. The MSP initially denied the application. McCloy promptly appealed that denial. Before the hearing for the appeal, the MSP sent McCloy a letter, dated April 8, 2015, reversing its prior decision and

---

[2] No EEOC proceeding ultimately occurred.

[3] As explained by McCloy's attorney in an affidavit, "[t]he tampering with a witness was the agreeing to pay [the complainant] $1,000.00 in return for her dismissing the EEOC complaint against him and the asking of another person to please not tell anyone what he had overheard." The statute under which he was charged is titled "Tampering with a witness, victim, or an informant," and it is codified amongst other "Obstruction of Justice" crimes in Chapter 73 of the United States Code's Crime and Criminal Procedure Title. *See* 18 U.S.C. § 1512.

4

approving his application.[4]  McCloy used this license to purchase several firearms.[5]

On February 8, 2021, McCloy filed another application with the MSP to purchase a handgun.[6]  The required criminal background check conducted by the MSP detected McCloy's 1999 federal conviction and sentence.  On March 4, 2021, the MSP sent McCloy a letter informing him of the denial of his permit and of his right to appeal the decision.

---

[4] The MSP asserts that no records exist documenting the reasons for the initial denial and the subsequent reversal of McCloy's 2015 HQL application.  At the hearing appealing the 2021 denial of McCloy's HQL application, Senior Trooper David Simmons, the officer tasked with scrutinizing McCloy's background and 2021 application, could not precisely speak to why the 2015 HQL application was approved after the initial denial.  Nonetheless, he speculated that it may have been the result of the F.B.I. criminal background report provided in 2015, and the subsequent MSP investigation, not producing sufficient clarity and proof of the precise crime of which McCloy was convicted.  Because the MSP bears the burden of proving that a conviction is disqualifying -- and because the MSP has a finite time period with which to make its determination -- Simmons explained that without a record showing the nature of McCloy's conviction, "we would overturn the disapproval because we don't have hard proof to show what he was convicted of and approve if this is a disqualifying crime."  Simmons noted, however, that regardless of the prior approval, the MSP can still disqualify an application if "in a subsequent background check we did catch the mistake," as Simmons asserted happened in the current dispute regarding the 2021 application.

[5] During the OAH hearing appealing the denial of his 2021 HQL application, McCloy testified that he used the 2015 HQL to purchase "a 22-caliber pistol . . . two handguns, single action . . . two other single[-]action pistols, and a rifle . . . All of those were approved."

[6] Because McCloy's original HQL was issued in 2015, he had to renew his permit to purchase additional regulated firearms in 2021.  *See* PS § 5-309(a) (barring exception, "a permit expires on the last day of the holder's birth month following [two] years after the date the permit is issued").

It appears from the record that McCloy filed his application on February 8, 2021, but the dealer attempting to sell McCloy the firearm completed the application on February 26, 2021.

5

McCloy sent an email to the MSP the following day requesting a formal hearing to appeal.[7]

That same day, Senior Trooper David Simmons, the MSP officer assigned to review McCloy's application, responded, informing McCloy that, while his federal conviction did not federally prohibit his possession of a firearm, the MSP determined 18 U.S.C. § 1512(c)(1) was comparable to Section 9-302 of Maryland's Criminal Law Article ("CR"), and because this statute carried a penalty of up to ten years' imprisonment, it constituted a "disqualifying crime" under Maryland law.[8]  Two days before the scheduled OAH hearing for the appeal, the MSP changed its position and advised McCloy that the equivalent statute to his federal conviction was Section 9-305(a), *not* Section 9-302, of the Criminal Law Article.[9]

---

[7] "A person who is denied a permit or renewal of a permit or whose permit is revoked" may file a request for an appeal, in writing, with the MSP and the OAH within 10 days of receiving notice of the MSP's decision.  PS § 5-312(a)(1).  Within 60 days, the OAH shall schedule and conduct such "a de novo hearing on the matter, at which witness testimony and other evidence may be provided," after which the OAH shall issue findings of fact and a decision.  *Id.* § 5-312(b)(1).  Any hearing or subsequent proceeding of review "shall be conducted in accordance with Title 10, Subtitle 2 of the State Government Article."  *Id.* § 5-312(c)(1).

[8] Though we typically abbreviate the Articles of the Maryland Code using the first initials of the titles of the relevant articles, we use the naming convention "CR," rather than "CL," for the Criminal Law Article as to avoid potential confusion with the Commercial Law Article of the Maryland Code.

[9] The parties dispute how long before the hearing the MSP alerted McCloy of this change.  McCloy claims it occurred immediately prior to the hearing.  The MSP claims it advised McCloy's counsel two days before the hearing to the change in its position on the comparable statute.  Because the circuit court relied on the two-day time frame, we will rely upon that finding, as well.

*McCloy's Appeal of the Denial of His 2021 HQL Application*

On July 21, 2021, the OAH conducted a hearing before an ALJ to review the denial of McCloy's application. Separate counsel represented both the MSP and McCloy. McCloy's attorney did not note an objection to the late notice of the MSP's change in position regarding the equivalent "disqualifying crime." Both parties proceeded with full examinations of Trooper Simmons and McCloy, the only witnesses who provided testimony, and further presented their respective arguments at the hearing.

On August 6, 2021, the ALJ issued a decision affirming the disapproval of McCloy's application. In so doing, the ALJ made findings of fact and conclusions of law distinct from the arguments presented by both the MSP and McCloy. The ALJ *sua sponte* determined that 18 U.S.C. § 1512(c)(1) was analogous to Section 9-306 of the Maryland Criminal Law Article, not Section 9-305(a). The ALJ concluded that because CR § 9-306 has a maximum penalty of five years' imprisonment (and because the federal law providing the basis for McCloy's conviction is analogous to this statute), McCloy's "misdemeanor conviction [in United States District Court for the District of Columbia] for tampering with a witness meets the definition of a disqualifying crime. . . ." The ALJ further determined that the MSP "correctly disapproved [McCloy's] application to purchase a regulated firearm based on this prior conviction."

---

Additionally, McCloy asserts that at the beginning of the OAH hearing his attorney requested to submit additional briefing related to the MSP changing its equivalency determination from CR § 9-302 to § 9-305. Our review of the record reflects that this request appears to be more of a general request to supplement any arguments, as necessary, following the hearing, and not specifically about notice of the substantive issue of comparing the Maryland statutes to his conviction.

7

The ALJ also found that McCloy "provided false information in his application in the attempt to hide the [D.C.] federal conviction because it might negatively impact his application." On his application, McCloy affirmed, under penalty of perjury, that he had not been convicted in Maryland or elsewhere of a misdemeanor which, under Maryland law, carries a maximum sentence of two years or more. The ALJ concluded that the MSP could deny McCloy's application based on this false statement alone. *See* PS § 5-122(a)(1)–(2).

On August 30, 2021, McCloy filed in the Circuit Court for Queen Anne's County a petition for judicial review of the ALJ's decision.[10] That court held a hearing on the petition on March 8, 2022. On May 19, 2022, the circuit court issued a memorandum opinion and order affirming the denial of McCloy's application. *See Jud. Rev. of the Decision of the Off. of Admin. Hearings Case of Mark A. McCloy OAH No. MSP-LD-20-21-06628*, Case No. C-17-CV-21-000138, at 1, 13 (Md. Cir. Ct. Queen Anne's Cnty. May 19, 2022) [hereinafter *McCloy Cir. Ct. Rev.*].

Notably, the circuit court disagreed with several of the ALJ's conclusions. *Id.* at 7–8, 11. The circuit court found that the OAH proceeding violated McCloy's due process rights because the ALJ pursued a rationale for disqualification not advanced by the MSP, and, in so doing, deprived McCloy of the opportunity to respond to the argument that his federal conviction was akin to a Maryland conviction under CR § 9-306. *Id.* at 7. Additionally, the court found that the record did not support the finding that McCloy

---

[10] "A party that is aggrieved by the decision of the [OAH] may appeal the decision to the circuit court." PS § 5-312(b)(3).

provided a false statement on his application when he checked the "no" box in response to the question asking whether he had been convicted of a crime in Maryland or elsewhere with a maximum penalty of more than two years' imprisonment. *Id.* at 7–8.

Nonetheless, the circuit court affirmed the denial of McCloy's application by the MSP. In reviewing whether the ALJ erred in rejecting the MSP's assertion that CR § 9-305(a) and 18 U.S.C. § 1512(c)(1) were equivalent, the circuit court independently compared the statutes. *Id.* at 8–11. The circuit court determined that the statutes were equivalent based on the common element of intent to interfere with or impede an official proceeding. *Id.* at 10–11. Accordingly, McCloy's federal conviction was a "disqualifying crime" that prohibited him from obtaining a license to possess a firearm. *Id.* As a result, the circuit court affirmed the MSP's denial of McCloy's application. *Id.* at 1. McCloy timely appealed the circuit court's ruling to this Court.

## DISCUSSION

### Standard of Review

"When reviewing a decision by an administrative agency, this Court 'looks through' the decision of the circuit court, applying the same standards of review to determine whether the agency itself erred." *In re Homick*, 256 Md. App. 297, 307 (2022) (quoting *Brandywine Senior Living at Potomac LLC v. Paul*, 237 Md. App. 195, 210 (2018)). The scope of judicial review of an agency decision is limited. *Mayor & City Council of Balt. v. Proven Mgmt., Inc.*, 472 Md. 642, 667 (2021); *see also Dep't of Hum. Res., Balt. City Dep't of Soc. Servs. v. Hayward*, 426 Md. 638, 650 (2012) ("We also are mindful that this Court's review of an agency's decision is narrow."). We review the agency's conclusions of fact

9

under the "substantial evidence test," which requires us to affirm the agency's findings when there exists "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Proven Mgmt., Inc.*, *supra*, 472 Md. at 667 (quoting *Bullock v. Pelham Wood Apartments*, 283 Md. 505, 512 (1978)). "We review questions of law *de novo*, although we give weight to an agency's interpretation of a statute it is charged with enforcing where the interpretation is longstanding and falls within the agency's area of expertise." *Brown*, *supra*, 188 Md. App. at 467; *see also Md. St. Police v. McLean*, 197 Md. App. 430, 438 (2011).

"On the other hand, 'a reviewing court is under no constraints in reversing an administrative decision which is premised solely upon an erroneous conclusion of law.'" *Proven Mgmt., Inc.*, *supra*, 472 Md. at 667 (quoting *People's Couns. v. Md. Marine Mfg. Co.*, 316 Md. 491, 497 (1989)). "*When an error of law is alleged*, a reviewing court is at liberty to substitute its judgment for that of the agency." *Regan v. Bd. of Chiropractic Exam'rs*, 120 Md. App. 494, 511 (1998) (emphasis added), *aff'd*, 355 Md. 397 (1999). Because the issue in dispute in this case is the interpretation of a statute, specifically the interpretation of PS § 5-101(g), the matter before us is such a question of law that we review *de novo*. *McLean*, *supra*, 197 Md. App. at 438. Further, while the determination of "disqualifying crimes" "falls within the agency's area of expertise," in the case before us, the MSP's interpretation of law is not "longstanding" when considering the 2015 approval of McCloy's HQL application and the 2021 denial of his subsequent HQL application; therefore, we are not beholden to give particular "weight" to the MSP's interpretation of PS § 5-101(g). *Id.*

10

**I.      The Circuit Court Did Not Err by Affirming the Denial of McCloy's HQL Application.**

We affirm the circuit court's legal conclusion that McCloy's federal conviction constitutes a "disqualifying crime" because the conviction is equivalent to a misdemeanor conviction in Maryland carrying a maximum penalty of more than two years' imprisonment.  We further hold that the circuit court did not err in its statutorily prescribed role when it reviewed and modified the ALJ's decision.  Though we review the ALJ's decision without deference to the circuit court's determination, we affirm the ALJ's ruling.  *See In re Homick*, *supra*, 256 Md. App. at 307.  Further, McCloy's equitable arguments are unavailing.  As such, we affirm the circuit court's affirmance of the MSP's denial of McCloy's 2021 HQL application.

**A.      Although McCloy's conviction occurred in 1999, the MSP correctly compared the federal statute under which he was convicted to an equivalent Maryland statute at the time McCloy submitted his permit application.  In so doing, the circuit court correctly concluded that his conviction constituted a "disqualifying crime."**

> *1.      McCloy argues that his 1999 conviction cannot be considered a disqualifying crime which bars his ability to possess a handgun.*

The denial of McCloy's HQL application is contingent upon whether his 1999 federal conviction was correctly classified as a "disqualifying crime."  McCloy argues that because his conviction occurred in 1999, it can only be compared to other Maryland statutes that existed in 1999.  McCloy asserts that, since CR § 9-305 became effective on October 1, 2002, he could not have been charged or convicted under this purportedly equivalent Maryland statute in 1999.  He, therefore, contends that he cannot be held to

account under that statute now.[11]  Regardless, even if the statutes could be compared, McCloy argues that the federal law upon which he was convicted, 18 U.S.C. § 1512(c)(1), does not sufficiently align with the Maryland statute (CR § 9-305) to be considered equivalent.  Further, he maintains that because the underlying facts of his conviction would not support a conviction under the Maryland statute, the laws are not equivalent, and his conviction is therefore not a "disqualifying crime."  Lastly, McCloy asserts that even if his federal conviction constitutes a disqualifying crime, the circuit court erred by affirming the denial of his application on grounds distinct from those reached by the ALJ.  For the reasons that follow, we are not persuaded.

> 2.  *When determining whether an "out-of-state" conviction is a "disqualifying crime," we compare the "out-of-state" statute to an "equivalent" Maryland statute, utilizing Maryland laws and their requisite penalties as they existed at the time of the filing of the HQL application.*

In 2006, the Attorney General of Maryland issued an opinion advising the Superintendent of the MSP how convictions from other jurisdictions outside Maryland interact with Maryland's firearms regulatory scheme when establishing "disqualifying crimes."  *See generally* 91 Op. Att'y Gen. 68, 68–80 (Md. 2006).  Notably, as issues relating to the permitting process have worked their way through Maryland appellate courts, the core tenets of that Attorney General's Opinion embedded in our case law on this issue.  *See McCloud v. Dep't of St. Police, Handgun Permit Rev. Bd.*, 426 Md. 473,

---

[11] The enabling legislation for the Maryland statute considered equivalent to the federal law under which McCloy was convicted passed the General Assembly and was signed into law in 2002.  *See* 2002 Md. Laws Ch. 26 (H.B. 11).

12

476 (2012) ("We shall hold that the [Appellate Court of Maryland] did not err in adopting the views expressed in the Attorney General's Opinion to determine what constitutes a disqualifying crime.").

A "disqualifying crime" includes both offenses committed in Maryland, as well as those offenses committed out-of-state that would be classified as misdemeanors with a potential penalty of more than two years' imprisonment under Maryland law.[12] *Id.* at 476; *Brown*, *supra*, 188 Md. App. at 480 ("The conviction for the violation can be from any state," so long as the violation would classify as a misdemeanor with a penalty of more than two years' imprisonment under Maryland law).

The actual penalty in the jurisdiction where the conviction occurred is not controlling; instead, the MSP "must look to the maximum penalty for the equivalent offense in Maryland." *McCloud*, *supra*, 426 Md. at 476; *see also McLean*, *supra*, 197 Md. App. at 448 ("[T]he General Assembly intended for PS § 5-101(g)(3) to be interpreted such that the conviction's potential punishment is measured by reference to the penalty under

_____

[12] The opinion of the Attorney General of Maryland (authored by then Chief Counsel Opinions and Advice Robert N. McDonald), makes clear that:

> The phrase "disqualifying crime" includes out-of-State offenses, as well as those committed in Maryland. An offense in another state that would be classified as a misdemeanor in Maryland with a potential penalty under Maryland law in excess of two years['] imprisonment falls within that definition. Thus, an individual who has been convicted of such an offense may not possess a regulated firearm in Maryland.

91 Opp. Att'y at 68.

the law of Maryland for a comparable violation."). Although the conviction at issue in *McCloud* was a violation of the District of Columbia's criminal code -- and thus akin to a conviction in another state -- we see no reason why *McCloud*'s holding would not apply to federal convictions later deemed "disqualifying crimes" as well.[13] *See McCloud*, *supra*, 426 Md. at 476.

Further, in evaluating whether an out-of-state conviction constitutes a "disqualifying crime," we look to the Maryland law, and its respective maximum statutory penalty, "at the time of the application for a permit or renewal application to carry or otherwise possess a regulated firearm." *McLean*, *supra*, 197 Md. App. at 433; *see also* 91 Op. Att'y at 68 (reasoning that because the gun permit statutes regulate the *current* possession of firearms, "the determination as to whether a particular misdemeanor '*carries*' a penalty in excess of two years should be made with reference to the penalty at the time of possession, if it is different from the potential penalty at the time of conviction" (emphasis added)).

---

[13] In *McCloud*, the Supreme Court of Maryland (at the time named the Court of Appeals of Maryland) observed that:

> If the Legislature had not intended out-of-state misdemeanors to be included, then it would have simply excluded the words "a violation classified as," and said, "a misdemeanor in the State that carries a statutory penalty of more than [two] years." The words "violation classified as a misdemeanor in the State" add out-of-state crimes to the statute's purview if they are equivalent to a Maryland misdemeanor carrying such penalty.

426 Md. at 480.

14

Looking to Maryland criminal statutes and their requisite penalties at the time an applicant requests a gun permit "promotes consistency and equality in the treatment of all persons convicted of the same criminal conduct[,] regardless of *where* or *when* the criminal conduct occurred." *McLean*, *supra*, 197 Md. App. at 449. Even if an out-of-state conviction would not disqualify lawful gun ownership in the jurisdiction where it occurred, the conviction could nonetheless constitute a "disqualifying crime," preventing the applicant from obtaining a firearm permit in Maryland. *See Brown*, *supra*, 188 Md. App. at 484 ("We hold that federal law does not preempt Maryland from adopting and applying its own law to determine the effect of out-of-state convictions under this State's criminal disarmament laws.").

Accordingly, McCloy's out-of-state conviction disqualifies him from obtaining a gun permit in Maryland, even if the conviction neither carried a penalty of more than two years' imprisonment, nor precluded the ability to obtain a firearm permit in the jurisdiction where the conviction was rendered. *McCloud*, *supra*, 426 Md. at 476; *Brown*, *supra*, 188 Md. App. at 484. Further, McCloy's argument that his 1999 conviction cannot be compared to CR § 9-305(a), or to § 9-306, because those statutes were not in existence in 1999 is equally unavailing.[14] In short, it is irrelevant what the laws of Maryland were at the time of his conviction; what matters is that the statute deemed comparable to the out-

---

[14] The General Assembly enacted PS § 9-305 as part of House Bill 11 during the 2002 Legislative Session, amending it in 2005 and again in 2018. *See* 2002 Md. Laws Ch. 26 (H.B. 11); 2005 Md. Laws Ch. 461 (S.B. 122); 2018 Md. Laws Ch. 145 (S.B. 1137) (amending the maximum penalty under the statute from 20 years' imprisonment to 10). The General Assembly enacted PS § 9-306 through House Bill 11 during the 2002 Legislative Session, as well. *See* 2002 Md. Laws Ch. 26 (H.B. 11).

of-state conviction was in place at the time he submitted his HQL application. *McLean*, *supra*, 197 Md. App. at 433.

No entity tasked with assessing whether McCloy's conviction was a "disqualifying crime" -- not the MSP, the ALJ, nor the circuit court -- erred by considering a potentially comparable Maryland law that was in effect at the time McCloy sought his HQL in 2021 rather than an equivalent Maryland statute in effect at the time of his 1999 conviction. Critically, CR § 9-305 is classified as a misdemeanor with a potential maximum penalty of ten years' imprisonment. Therefore, our review of whether the MSP erred in denying McCloy's permit depends upon whether the statute under which McCloy was convicted (18 U.S.C. § 1512(c)(1)) can be characterized as equivalent to CR § 9-305(a), thereby qualifying the conviction as a "disqualifying crime."

> 3. *If the elements of both the statute underlying the out-of-state conviction and the comparable Maryland statute sufficiently align, and if a reasonable mind could agree that the statutes are equivalent and that the applicant's conduct that constituted the out-of-state conviction could be understood to be criminalized under the equivalent Maryland statute, then the out-of-state conviction is a disqualifying crime that bars the possession of a regulated firearm.*

When determining whether a foreign conviction is a "disqualifying crime" under Maryland's gun permitting laws, neither this Court nor the Supreme Court of Maryland have articulated a clear standard of review for assessing the determination of equivalency of another jurisdiction's statute compared to a corresponding Maryland misdemeanor statute with a penalty in excess of two years' imprisonment.

McCloy advocates that we use the same standard Maryland courts use to assess the equivalency of convictions when determining "crimes of violence" for the purpose of

16

mandatory sentencing under CR § 14-101. *See Hall v. State*, 69 Md. App. 37, 61–62 (1986) (describing the two-step process, in which the court initially determines if the Maryland counterpart to the foreign crime would be classified as a "crime of violence" in Maryland, and, if so, whether the elements of the crime in the foreign jurisdiction "are sufficiently limited to those elements by which the crime is established in [Maryland]"). McCloy claims this method is consistent with the "categorical approach" used by federal courts when applying the Armed Career Criminal Act. *See Taylor v. United States*, 495 U.S. 575, 600–02 (1990). In addressing this element-by-element comparison, McCloy points to inconsistencies between the statutes that he alleges undermine the MSP's conclusion that they are equivalent.

The MSP appears to adopt this element-by-element comparison of the statutes as well, but it focuses on the common purpose of statutes -- that both prevent the intentional interference with or impeding of another person's participation in a court proceeding -- as controlling. The circuit court compared the elements of the respective statutes and ultimately determined that sufficient commonalities existed, specifically the common element of intent to disrupt a judicial proceeding. The MSP maintains that this Court should affirm the determination of equivalency.

The paucity of applicable case law provides us with no explicit standards on how to review this equivalency determination. We start our analysis by looking at this Court's decision in *Brown* for guidance. In *Brown*, we reviewed whether the MSP's conclusion that Brown's District of Columbia ("D.C.") conviction for possession of a prohibited weapon (a pipe) under D.C. Code § 22-3214 (1981) was equivalent to Maryland's CR § 4-

17

101(c)(2) (2003), "which forbids wearing or carrying a dangerous weapon with intent to injure." 188 Md. App. at 464–65. Thereafter, we held that "we need not decide whether the evidence before [the MSP] would have been sufficient to support a conviction for a criminal offense that was predicated upon a prior conviction for a disqualifying crime." *Id.* at 487.

Instead, we observed that we must determine "whether there is substantial evidence to support the [MSP's] determination that the act Brown was convicted of committing in D.C. would constitute the Maryland offense of wearing or carrying a dangerous weapon." *Id.* at 486–87. We concluded that Brown's conviction in D.C. would constitute an offense under the comparable Maryland statute. *Id.* at 487. We recognized that there were distinctions between the Maryland and D.C. statutes, including the former requiring intent to injure, whereas the latter had no such intent requirement. *Id.* at 487–88. Notwithstanding these distinctions, because Brown admitted in his plea in the Superior Court of D.C. that he possessed a deadly weapon, the pipe, and that he "[g]ot into an altercation with another male," we held that "substantial evidence" existed for the Board to determine that Brown had been convicted of an equivalent crime.[15] Since the "D.C. conviction for possession of a dangerous weapon would be equivalent to the Maryland

---

[15] Because the Maryland statute required an intent to injure, but the D.C. statute did not, this Court reasoned that since Brown admitted to both having a weapon and to getting into an altercation, circumstantial evidence existed to show, or at least to infer, that Brown *intended* to use the pipe to injure the other male with whom he had an altercation. *See Brown*, *supra*, 188 Md. App. at 488.

18

conviction for wearing or carrying a dangerous weapon," Brown's out-of-state conviction constituted a disqualifying crime that prohibited him from obtaining an HQL. *Id.* at 488.

Accordingly, though this Court in *Brown* acknowledged that the determination of whether the D.C. conviction constituted a "disqualifying crime" was a question of law, this Court, in making its legal determination, relied upon the facts from Brown's conviction to assess whether the relevant Maryland statute was equivalent. *See id.* at 446–48. While the underlying question of law was reviewed *de novo*, this Court in *Brown* held that the utilization of additional facts lent itself to the "substantial evidence" test.[16] *Id.* at 446–47 ("When we review an agency decision that is a mixed question of law and fact, we apply the substantial evidence test," as we would for a purely factual determination.).

We, therefore, hold that the analysis provided by *Brown* applies in the following manner when assessing the determinations made by the MSP of the equivalency of out-of-state convictions against comparable misdemeanors in Maryland. Initially, we compare the statutory elements of the applicant's out-of-state conviction with the elements of the comparable Maryland misdemeanor with a penalty in excess of two years' imprisonment,

---

[16] Applying the "substantial evidence" test in this fashion also aligns with the less stringent "preponderance of evidence" standard used in hearings conducted by the OAH regarding such appeals of HQL application denials, rather than the far more onerous "reasonable doubt" standard of a criminal proceeding. *See* Md. Code, (1984, 2021 Repl.) § 10-217 of the State Government Article ("SG"); Md. Code Regs. ("COMAR") 29.03.01.22(D), (H). It also aligns with the "preponderance of evidence" standard utilized in civil matters. *See Santosky v. Kramer*, 455 U.S. 745, 755 (1982) (discussing the different stakes involved in civil, compared to criminal, disputes resulting in the former using the "'preponderance of the evidence' standard" compared to the latter using the "'reasonable doubt' standard"). Though McCloy's conviction was a criminal matter, the application of that conviction within the firearms regulatory scheme is "civil in character." *State v. Raines*, 383 Md. 1, 31–32 (2004).

19

noting that we look to both the applicable Maryland law and the maximum penalties corresponding with that respective law at the time of the application, not at the time of the applicant's out-of-state conviction. *See McCloud*, *supra*, 426 Md. at 476, *McLean*, *supra*, 197 Md. App. at 433, *Brown*, *supra*, 188 Md. App. at 480.

If we conclude that the statutes are comparable, we then assess whether a reasonable mind could conclude that the out-of-state and Maryland statutes prohibit similar conduct, based upon a comparison of the elements of the respective statutes. *See Brown*, *supra*, 188 Md. App. at 467; *see also Proven Mgmt., Inc.*, *supra*, 472 Md. at 667 (noting that under the "substantial evidence test" we affirm the agency's decision if we find "such relevant evidence as a reasonable mind might accept as adequate to support [the agency's] conclusion." (citation omitted)). In that context, we determine if a reasonable mind, in the position of the authority determining whether the out-of-state conviction is a disqualifying crime, could conclude that the conduct producing the applicant's out-of-state conviction could be considered prohibited by the purportedly "equivalent" Maryland statute. *See Brown*, *supra*, 188 Md. App. at 467; *see also Proven Mgmt., Inc.*, *supra*, 472 Md. at 667. If we answer both these inquiries in the affirmative, then the determination that the out-of-state conviction is a "disqualifying crime" should be affirmed.[17] We turn now to applying

---

[17] Although this standard we extract from *Brown* may not be as exacting as the element-by-element approach McCloy demands, it aligns with the "categorical approach" he asserts the MSP should adopt. The "categorical approach," used by federal courts when applying the Armed Career Criminal Act, looks to compare statutes with "certain common characteristics . . . regardless of how they were labeled by state law," thus it has the potential to "permit the [reviewing court] to go beyond the mere fact[s] of [the] conviction." *Taylor*, *supra*, 495 U.S. at 589, 602; *see also United States v. Proctor*, 28

this analytical framework to this dispute.[18]

We begin by noting that CR § 9-305 satisfies the statutory requirements of a "disqualifying crime," because it is a misdemeanor in Maryland that carries a penalty in excess of two years' imprisonment in effect at the time McCloy filed his 2021 HQL application. *McCloud*, *supra*, 426 Md. at 487. Additionally, because McCloy's conviction

---

F.4th 538, 544–45 (4th Cir. 2002). This approach looks to the "minimum conduct" needed to commit the equivalent offense, as established by relevant state court decisions. *Proctor*, *supra*, 28 F.4th at 545. So long as there exists a "'realistic probability, not [just] a theoretical possibility,' that a state would actually punish that conduct," a court can proceed to evaluate that minimum conduct committed by the defendant under the comparable Maryland law. *Id.* (quoting *United States v. Doctor*, 842 F.3d 306, 308–09 (4th Cir. 2016)).

Similarly, the standard we set forth also aligns with the two-step analysis for "crimes of violence" articulated in *Hall v. State* -- and advocated by McCloy -- in which a court reviews whether the elements of the out-of-state crime providing the basis of the defendant's conviction "are sufficiently limited to those elements by which the crime is established in [Maryland]." 69 Md. App. at 61–62.

[18] Notably, the issue of determining whether an out-of-state conviction is a disqualifying crime under PS § 5-101(g)(3) is a matter of statutory interpretation, and thus a question of law we review *de novo*. *See McLean*, *supra*, 197 Md. App. at 438. As such, we analyze whether CR § 9-305(a) is equivalent to 18 U.S.C. 1512(c)(1), as this was the determination made by the MSP and reviewed by the ALJ.

Additionally, the ALJ's analysis of CR § 9-306(a) ("A person may not, by threat, force, or corrupt means, obstruct, impede, or try to obstruct or impede the administration of justice in a court of the State."), which she determined was the more appropriate match to McCloy's federal conviction than CR § 9-305(a), was not argued before her but addressed by the ALJ *sua sponte*. This raises significant due process concerns discussed *infra*. Thus, because our *de novo* review puts us effectively in the shoes of the ALJ, we will limit our review to the arguments made by the parties *before* the ALJ. *See Brown*, *supra*, 188 Md. App. at 466–67 (stating we review the agency decision *de novo); Regan*, *supra*, 120 Md. App. at 511 (stating a reviewing court may substitute its judgment for that of the agency *when that court finds error while reviewing a matter of law*). As such, we need not address the potential equivalency of CR § 9-306 with McCloy's conviction.

occurred in 1999, our equivalency evaluation will utilize the version of the federal statute from that year.

Broken into its component parts, 18 U.S.C. § 1512(c)(1), as read in 1999 when McCloy was convicted, prohibits (i) the intentional (ii) harassment (iii) of another person, (iv) which results in hindering, delaying, preventing, or dissuading that person (v) from attending or testifying (vi) in an official proceeding.[19] The definition of an "official proceeding," most pertinent to both this comparison and to the facts of McCloy's conviction, is "a proceeding before a judge or court of the United States, a United States magistrate judge . . . or . . . before a Federal Government agency which is authorized by law." 18 U.S.C. § 1515(a)(1)(A), (D). Section 9-305(a) of the Maryland Criminal Law Article prohibits a person from (i) threatening, forcing, or using "corrupt means" (ii) to attempt to influence, intimidate or impede (iii) a juror, a witness, or an officer of a court of Maryland or the United States, (iv) in the performance of that individual's official duties.[20]

In our view, there are several comparable components between these statutes. Most notably, both statutes prevent intentionally attempting to thwart another person's participation in a judicial or a quasi-judicial proceeding. While 18 U.S.C. § 1512(c)(1) requires the defendant to "intentionally" attempt to hinder or prevent a person from

---

[19] The statute specifically addresses one who "intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from attending or testifying in an official proceeding." 18 U.S.C. § 1521(c)(1) (1999).

[20] "A person may not, by threat, force, or corrupt means, try to influence, intimidate, or impede a juror, a witness, or an officer of the court of the State or of the United States in the performance of the person's official duties." CR § 9-305(a). The elements of the statute have not changed since McCloy submitted his application in 2021.

22

testifying, CR § 9-305(a) prohibits a defendant from attempting to impede a witness from performing her duties -- which, when applied to McCloy's conviction, can only logically mean the witness' duty to testify -- by using "corrupt means." Such "corrupt means involves acting with corrupt intent," including what may seem otherwise benevolent or lawful actions but done with the intent "to preclude another person from testifying." *State v. Wilson*, 471 Md. 136, 168 (2020) (holding that the defendant used "corrupt means" under CR § 9-305(a) by lawfully marrying a witness with the intent to preclude that witness from testifying in a criminal proceeding due to marital privilege).

We next proceed to our second analytical step, in which we view whether a reasonable mind could conclude that the conduct resulting in McCloy's conviction under 18 U.S.C. § 1512(c)(1) would also be prohibited by CR § 9-305(a). McCloy's attempt to reach a monetary resolution with his co-worker, the complainant in the EEOC case, for the purpose of dissuading her from participating in the adjudication of that proceeding satisfies this definition of "corrupt means" articulated in *Wilson*. Indeed, McCloy attempted to settle the sexual harassment dispute with his co-worker by offering her $1,000 for her to dismiss the EEOC complaint. Monetary settlements are common, lawful methods of resolving disputes. Nevertheless, while McCloy's actions may appear to be legal in isolation, they would be illegal if done with the "corrupt intent" of preventing the witness from testifying in an official proceeding. *Id.*

The same characterization applies to McCloy's efforts to have his co-worker not disclose the phone call the co-worker overheard. *Id.* Notably, the "official proceeding" element of § 1512(c)(1) encompasses proceedings by federal agencies, like one resulting

23

from an investigation of a complaint by the EEOC. 18 U.S.C. § 1515(a)(1)(A), (D). Such a proceeding would occur in a "court of the United States" -- whether it be an Article I federal agency court or an Article III federal district court -- where the witness would perform her "official duties" of testifying, as required under CR § 9-305(a).

Therefore, a reasonable mind could reach the determination made by the MSP that 18 U.S.C. § 1512(c)(1) and CR § 9-305(a) are equivalent such that substantial evidence exists to support the conclusion that McCloy had been convicted of a "disqualifying crime" that precluded him from obtaining a handgun permit. *See Brown*, *supra*, 188 Md. App. at 488. We, therefore, agree with the ultimate determination of the ALJ that the MSP did not err in denying McCloy's application to purchase a regulated firearm.

> 4. *The circuit court did not err in modifying the ALJ's ruling while affirming the denial of McCloy's HQL application.*

We affirm the circuit court's determination that the MSP correctly denied McCloy's HQL application. Nonetheless, the circuit court acknowledged that the ALJ exceeded her authority by considering, and then concluding, that McCloy's federal conviction was equivalent to CR § 9-306 rather than CR § 9-305(a), as argued by the MSP. *McCloy Cir. Ct. Rev.*, *supra*, at 7. The circuit court further agreed with McCloy that the ALJ erred in finding that McCloy provided a false statement on his HQL application regarding his federal conviction constituting a disqualifying crime.[21] *Id.*

---

[21] The ALJ concluded, on grounds other than those argued before it, that the MSP properly denied McCloy's permit application. We disagree with the reasoning of the ALJ. Our equivalency analysis *supra* demonstrates that it was not reasonable for McCloy to know that he was making such a false statement, as his federal conviction did not carry

24

The circuit court was not bound by the ALJ's legal conclusions because -- while mindful of the deference owed to an agency's "longstanding" interpretation premised upon the agency's "area of expertise" -- the determination of statutory equivalence is a question of law reviewed *de novo*. *McLean*, 197 Md. App. at 438. Because the MSP, and not the ALJ, is the agency tasked with reviewing HQL applications and interpreting "disqualifying crime[s]" under PS § 5-101(g), such deference may be owed to the MSP, but not to the ALJ, in the circuit court's *de novo* review. *Id.*; *see Brown*, *supra*, 188 Md. App. at 471 (stating the MSP is charged with interpreting relevant law in approving or denying HQL applications); *see also* PS § 5-121(a) (authorizing the MSP to review HQL applications). Thus, the circuit court was free to independently review the MSP's assertion that 18 U.S.C. § 1521(c)(1) was equivalent to CR § 9-305(a), and, in so doing, determine that McCloy's conviction was a disqualifying crime.

Further, when reviewing a decision by an administrative agency, the circuit court may remand for further proceedings, affirm or reverse the final decision of the agency, or "modify the decision if any substantial right of the petitioner may have been prejudiced." Md. Code, (1984, 2021 Repl.) § 10-222(h) of the State Government Article ("SG"). Here,

---

such a two-year penalty, and, as we have shown, the equivalency analysis was not straightforward, as even the ALJ misconstrued it. *See* PS § 5-139(a) (prohibiting a person from knowingly making a false statement on a firearm application). The MSP issuing McCloy his 2015 HQL, despite knowing of his 1999 conviction, underscores this confusion. McCloy cannot be charged with knowledge that his 1999 conviction was a "disqualifying crime" when he submitted his 2021 HQL application because even the MSP did not make such a determination until after this request. Moreover, the ALJ reached this conclusion *sua sponte*, without it being asserted by the MSP, and without providing McCloy reasonable grounds to present a defense to such a claim at a hearing, thus raising due process concerns.

the circuit court determined that the ALJ violated McCloy's rights by considering arguments not presented at the hearing. *See McCloy Cir. Ct. Rev.*, *supra*, at 7. The circuit court further determined that the ALJ unreasonably concluded that McCloy should have known his 1999 federal conviction was disqualifying despite the prior issuance of his 2015 HQL. *Id.* As such, the circuit court correctly modified the ALJ's decision. Critically, this did not alter the circuit court's, nor the ALJ's, ultimate conclusion that the MSP properly denied the permit. Because we agree with this conclusion as well, we affirm the circuit court's order affirming the denial of McCloy's HQL application.

### B. McCloy is not entitled to equitable relief from the denial of his HQL application.

McCloy asserts that even if the MSP correctly applied the law explained *supra* and determined that his 1999 conviction prohibits the approval of his 2021 HQL application, numerous equitable principles bar the MSP from denying him his right to gun ownership. These principles do not warrant the outcome advanced by McCloy, particularly in this context.

#### 1. The MSP's prior approval of McCloy's 2015 HQL license does not estop the agency from denying his 2021 HQL application.

McCloy argues that the MSP's previous issuance of his 2015 HQL, despite the existence of his 1999 conviction, estops the agency, and by extension the ALJ and this Court, from denying his 2021 HQL application. Further, because McCloy used this license to then purchase regulated firearms, he claims the denial of his 2021 license is akin to entrapment. We find little reason to wade into this argument because the issuance or denial of an HQL is not a criminal matter warranting the affirmative defense of entrapment-by-

26

estoppel.[22] *McLean*, *supra*, 197 Md. App. at 447 n.24 (refusing to address McLean's entrapment by estoppel arguments because "there has been no effort on the part of MSP to prosecute for violation of firearms laws," and "the statute in question is not a penal statute").

More directly, though, his estoppel argument has no merit, because the MSP cannot be estopped from enforcing its statutory scheme in regulating firearms. "[T]he doctrine of estoppel will not be applied against the State in the performance of its governmental, public or sovereign capacity or in the enforcement of police measures." *Salisbury Beauty Schs. v. St. Bd. of Cosmetologists*, 268 Md. 32, 63–64 (1973). To estop the State from enforcing otherwise valid laws or regulations because prior conduct of public employees led the claimant to believe the law was otherwise would deprive the public of the protections provided by the statute only because of the mistaken action of those employees. *In re Cash-N-Go, Inc.*, 256 Md. App. 182, 206 (2022). The fact that the MSP approved prior firearms purchases does not preclude the agency from correctly applying the statute now and determining McCloy's 1999 conviction is a disqualifying crime that bars the issuance of his handgun permit. *See McLean*, *supra*, 197 Md. App. at 446–47, 449.

---

[22] Any potential criminal consequences from the denial of McCloy's HQL application are not before us. *See McLean*, *supra*, 197 Md. App. at 447 ("[T]here is no reason to believe that [McLean] would not be given reasonable consideration for the transfer of any regulated firearms in his possession before being subject to any criminal liability.").

27

2. *The* Ex Post Facto *Clause does not bar the MSP from determining that McCloy's 1999 federal conviction was a "disqualifying crime."*

McCloy asserts that applying the penalties of a Maryland criminal statute that did not exist at the time the conduct resulting in his 1999 federal conviction occurred violates both the United States and Maryland constitutional provisions against retrospective punishment, commonly referred to as "*ex post facto* laws." *See* U.S. Const. art. 1 § 10, cl. 1; Md. Const. art. 17; *Watkins v. Sec'y, Dep't of Pub. Safety & Corr. Servs.*, 377 Md. 34, 48 (2003) ("Maryland's *ex post facto* clause has been viewed generally to have the 'same meaning' as its federal counterpart."). We disagree. Indeed, the prohibition of *ex post facto* laws concerns the punishing of acts presently deemed criminal when they were not viewed as such at the time of their occurrence. *Watkins*, *supra*, 377 Md. at 48.

Most obviously, the statutes regulating firearms apply to their *current* possession and transfer, not to past behaviors. *See* 91 Opp. Att'y at 79; *see also Corcoran v. Sessions*, 261 F. Supp. 3d 579, 601–02 (D. Md. 2017) ("The Maryland Firearms Prohibitions under challenge here are not retrospective. . . . For the same reason that firearms prohibitions do not run afoul of the Ex Post Facto Clause when used to prosecute a new offense, they do not offend the Clause when as-applied to prohibit a person from possessing a firearm in the first place."). The determination that McCloy's 1999 conviction under 18 U.S.C. § 1512(c)(1) is equivalent to CR § 9-305(a) -- a statute that did not exist at the time of his conviction -- does not further criminalize or punish McCloy, nor does it modify his conviction in any way. *See State v. Raines*, 383 Md. 1, 30 (2004) (holding Maryland statute permitting the DNA collection of persons whose commission of a qualifying crime

28

occurred prior to the effective date of the statute did not violate the *ex post facto* clause); 91 Opp. Att'y at 79 ("While a disqualification under the regulated firearms law can be a collateral consequence of a criminal conviction, it is not part of the sentence.").

Further, the gun licensing provisions enforced against McCloy are a "regulatory scheme and [are] thus civil in character." *Raines*, *supra*, 383 Md. at 31–32. "Any deterrent effect is secondary to the regulatory nature of the statute." *Id.* at 30. The logical extension of McCloy's position would prevent the government from modifying any regulatory scheme for fear its new application would be deemed unconstitutionally retrospective.

        *3.     McCloy's due process claims are more appropriate for consideration via post-conviction relief rather than as a challenge to the denial of his 2021 HQL application.*

McCloy asserts two theories of how the denial of his HQL application violated his due process rights. First, he argues that denying him the ability to purchase a firearm violates his due process rights because he was not informed in 1999 that a collateral consequence of his guilty plea would mean the subsequent stripping of his constitutional right to keep and bear arms. Initially, we note the logical impossibility at the root of McCloy's assertion. He essentially argues that prior to the acceptance of his 1999 guilty plea, he should have been informed that his conviction might be considered equivalent to a statute not yet in existence, and that 20 years after his conviction, this equivalency determination would prohibit him from obtaining a gun permit. Regardless, "[e]ven if it was constitutionally required for [McCloy] to be informed of this collateral consequence, the proper remedy for such a violation of his due process rights would be to attack his guilty plea in [United States District Court for the District of Columbia] as involuntary,"

29

or to pursue a claim of ineffective assistance of counsel, or other postconviction relief, in the court that accepted his plea and conviction. *McCloud v. Dep't of St. Police*, 200 Md. App. 725, 734 (2011), *aff'd sub nom. McCloud v. Dep't of St. Police, Handgun Permit Rev. Bd.*, 426 Md. 473 (2012).

McCloy also maintains that a due process violation occurred following his OAH hearing because the ALJ made the *sua sponte* determination that 18 U.S.C. § 1512(c)(1) was not equivalent to CR § 9-305(a) but rather to CR § 9-306. He alleges that this deprived him of the ability to participate in a full and fair hearing in which he could prepare to rebut the arguments against him.[23] Though we are troubled by the ALJ's decision to pursue reasoning for the denial of the permit beyond the arguments presented by the MSP, we review the ALJ's legal conclusion *de novo*. As a result, we return McCloy to the same position he was in before the ALJ because we considered only arguments regarding whether CR § 9-305(a) -- not CR §§ 9-306 or 9-302 -- was the appropriate Maryland law to compare to McCloy's federal conviction. Accordingly, we affirm the MSP's denial of McCloy's application, *supra*, on other grounds as explained within this opinion.

---

[23] Related to this due process argument is McCloy's frustration with the MSP, which originally informed him that the agency determined his 1999 conviction was equivalent to a conviction under CR § 9-302, only to change that determination shortly before the OAH hearing and instead say that the equivalent Maryland statute was CR § 9-305(a). Notably, at the OAH hearing, McCloy's counsel failed to object to this notice. Further, though not dispositive, at the hearing McCloy's counsel argued that (1) McCloy could not now be held to account under a statute that did not exist at the time of his conviction, and that (2) the facts underlying McCloy's federal conviction would not result in a conviction under Maryland law.

At oral argument, the parties addressed the legality of McCloy's possession of firearms lawfully purchased with his 2015 HQL. Initially, we note that the ensuing repercussions of our affirmance in this case, and the potential consequence this may have on his possession of those firearms, is not before us. *See Diallo v. State*, 413 Md. 678, 692–93 (2010) ("[A]rguments not presented in a brief or not presented with particularity will not be considered on appeal." (citation omitted)). Additionally, as this court has addressed such a concern in prior cases interpreting "disqualifying crime" determinations:

> We recognize that interpreting PS § 5-101(g)(3) as we do may seem harsh in this particular situation—as it results in the non-renewal of [McLean's] permit to carry a handgun, where there is no indication that he has abused the right provided to him by that permit, or for that matter, any firearms permit, in any way. . . . But, in light of the overall statutory scheme, that does not necessarily render the interpretation illogical, unreasonable or inconsistent with common sense, as urged by [McLean].
> . . .
> Nothing in the record reflects an effort by MSP to void any existing permits and, even if that were the case, there is no reason to believe that [McLean] would not be given reasonable consideration for the transfer of any regulated firearms in his possession before being subject to any criminal liability.

*McLean*, *supra*, 197 Md. App. at 445–47.

## CONCLUSION

Returning to the issue at the heart of this appeal, we synthesize the prior holdings of this Court and the Supreme Court of Maryland into the following standard for reviewing courts to utilize when analyzing the MSP's determination that an out-of-state conviction is a "disqualifying crime" under Maryland's firearms regulatory framework. First, the reviewing court must compare the elements of the foreign statute providing the basis for

31

the applicant's out-of-state conviction with the elements of the purportedly equivalent Maryland misdemeanor statute with a penalty of more than two years' imprisonment to determine if a reasonable mind could accept the conclusion that the foreign and Maryland statutes aim to prohibit the same conduct. In so doing, the reviewing court must use the Maryland statute (and its maximum penalty) as it existed at the time the applicant requested an HQL, not at the time of the applicant's out-of-state conviction.

Thereafter, the reviewing court must determine whether a reasonable mind could conclude that the conduct producing the applicant's out-of-state conviction would be prohibited by the purportedly equivalent Maryland statute. If the reviewing court answers both these inquiries affirmatively, then the MSP's equivalency determination must be affirmed, as well.

We, therefore, agree with the MSP's conclusion that McCloy's 1999 federal conviction under 18 U.S.C. § 1512(c)(1) was equivalent to CR § 9-305(a), a misdemeanor in Maryland with a maximum penalty in excess of two years' imprisonment. As such, his conviction is a "disqualifying crime" that prohibits him from possessing a regulated firearm and requires the MSP to deny his HQL application. We, therefore, agree with the ultimate determination of the ALJ, and because the circuit court rightfully modified the ALJ's conclusions while affirming the ALJ's judgment, we affirm the judgment of the circuit court.

> **JUDGMENT OF THE CIRCUIT COURT FOR QUEEN ANNE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

32

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/0673s22cn.pdf