*In the Matter of Mark McCloy*, No. 10, September Term, 2023. Opinion by Gould, J.

**DISQUALIFYING CRIMES – FIREARMS**

The Supreme Court of Maryland held that, in determining whether an out-of-State crime is disqualifying under Md. Code Ann., Pub. Safety § 5-101(g), the out-of-State crime is compared with the potentially equivalent Maryland crime in effect at the time the applicant submitted the firearm application, not at the time the applicant was convicted of the out-of-State crime.

**DISQUALIFYING CRIMES – FIREARMS**

The Supreme Court of Maryland held that an out-of-State crime is equivalent to a Maryland crime under Maryland's Public Safety Article ("PS") if the elements of the out-of-State crime are the same as or narrower than the Maryland crime. If the out-of-State crime is equivalent to a "disqualifying crime" in Maryland under PS § 5-101(g), then the out-of-State crime is also disqualifying. If the elements of the out-of-State crime are broader than the Maryland crime and there is a sufficient basis to conclusively determine the acts that formed the basis of the conviction for the out-of-State crime, then the out-of-State crime is disqualifying if those acts would support a conviction under a disqualifying Maryland crime.

Circuit Court for Queen Anne's County
Case No.: C-17-CV-21-000138
Argued: November 3, 2023

IN THE SUPREME COURT

OF MARYLAND

No. 10

September Term, 2023

_____

IN THE MATTER OF

MARK MCCLOY

_____

Fader, C.J.,
Watts,
*Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

_____

Opinion by Gould, J.

_____

Filed: August 20, 2024

* Hotten, J., now a Senior Justice, participated in the hearing and conference of this case while an active member of this Court. After being recalled pursuant to the Maryland Constitution, Article IV, § 3A, she also participated in the decision and adoption of this opinion.

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

Maryland regulates the purchase, sale, and possession of "regulated firearms." MD. CODE ANN., PUB. SAFETY ("PS") §§ 5-101 to -148 (2003, 2022 Repl. Vol., 2023 Supp.).[1] Regulated firearms include handguns and certain "assault weapons or their copies[.]" PS § 5-101(r)(2). To buy one, you must submit a firearm application to be reviewed by the Maryland State Police ("MSP"). The MSP must deny your application if you have been convicted of a "disqualifying crime," a term defined by PS § 5-101(g). If the MSP does not deny your application within seven days, you may proceed with your purchase. If the MSP timely rejects your application, you may pursue an administrative review and, if you lose there, you may seek a judicial review.

Determining whether a prior conviction in Maryland is a "disqualifying crime" under PS § 5-101(g) is straightforward. But that is not necessarily true if the conviction is from out-of-State[2]: An out-of-State conviction is disqualifying if the conviction is for a crime that is equivalent to a Maryland disqualifying crime under PS § 5-101(g). The issue in this case is how to determine whether an out-of-State crime is equivalent to a Maryland disqualifying crime.

---

[1] PS § 5-148 was approved on May 16, 2024, and took effect on June 1, 2024. Thus, while it is currently Maryland law, it is not captured in the 2023 Supplement.

[2] When capitalized herein, "State" refers to the State of Maryland. MD. CODE ANN., GEN. PROVIS. § 1-115(b) (2014, 2019 Repl. Vol.).

I

A

To buy a handgun in Maryland, you must first obtain a handgun qualification license ("HQL") from the MSP. PS § 5-117.1.[3] To qualify, you must be at least 21 years old, pass an MSP-approved firearms safety course, and reside in Maryland. PS § 5-117.1(d)(1)-(3). You will be denied an HQL if you are barred from buying or possessing a handgun under a "federal or State law." PS § 5-117.1(d)(4). Maryland law prohibits you from possessing a regulated firearm if, among other things, you have been convicted of a "disqualifying crime." PS § 5-133(b)(1). A "disqualifying crime" is: "(1) [A] crime of violence; (2) a violation classified as a felony in the State; or (3) a violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years." PS § 5-101(g). Upon receipt of a completed application, the MSP has 30 days to issue an HQL or provide a written explanation for its denial. PS § 5-117.1(h); COMAR 29.03.01.32. An HQL is valid for ten years and is renewable. PS § 5-117.1(j).[4]

The HQL is just the first step. Before you can buy a specific handgun, you must complete a firearm application and submit it to the seller, a "licensee," which in turn

---

[3] To be precise, HQLs, along with firearm applications and handgun permits, are issued or approved by the Secretary of State Police ("Secretary") or the Secretary's designee. PS §§ 5-101(u), 5-301(e), 5-121, 5-122, 5-306. The Secretary's designee for firearm applications is the Firearms Registration Section of the MSP's Licensing Division, *see* COMAR 29.03.01.01B(18), which, for the sake of simplicity, we also refer to as the "MSP."

[4] In *Maryland Shall Issue, Inc. v. Moore*, 86 F.4th 1038 (4th Cir. 2023), the United States Court of Appeals for the Fourth Circuit held unconstitutional Maryland's

2

submits it to the MSP.[5] PS §§ 5-117, 5-118(a)(1).[6] The firearm application requires that you provide information about the firearm to be "purchased, rented, or transferred" and detailed personal information. PS § 5-118(b).[7] And you must represent under penalty of perjury that, among other things, you have "never been convicted of a disqualifying crime[.]" PS § 5-118(b)(3)(ii).[8]

---

requirement to obtain an HQL before obtaining a handgun, as stated in PS § 5-117.1. A rehearing en banc was granted, *see Maryland Shall Issue, Inc. v. Moore*, No. 21-2017 (L), 2024 WL 124290 (4th Cir. Jan. 11, 2024), and the en banc Court's decision is pending. The issue in *Maryland Shall Issue* is whether Maryland's requirement to obtain an HQL is unconstitutional under the test the United States Supreme Court established in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). Because the case before us involves the disapproval of a firearm application rather than an HQL, we do not believe the outcome of the *Maryland Shall Issue* litigation affects this case.

[5] Those "in the business of selling, renting, or transferring regulated firearms" must obtain a "dealer's license." PS § 5-106. The holder of a dealer's license is called a "licensee." PS § 5-101(p).

[6] Although not relevant here, applications may also be submitted to a "designated law enforcement agency[.]" PS § 5-118(a)(1).

[7] The specific information required is "the firearm applicant's name, address, Social Security number, place and date of birth, height, weight, race, eye, and hair color, signature, driver's or photographic identification soundex number, occupation, and regulated firearm information for each regulated firearm to be purchased, rented, or transferred[.]" PS § 5-118(b)(1).

[8] Under PS § 5-118(b)(3), the applicant must represent that he or she:

(i) is at least 21 years old;
(ii) has never been convicted of a disqualifying crime;
(iii) has never been convicted of a violation classified as a common law crime and received a term of imprisonment of more than 2 years;
(iv) is not a fugitive from justice;
(v) is not a habitual drunkard;

Upon receipt of the application, the MSP "shall conduct an investigation promptly to determine the truth or falsity of the information supplied and statements made in the firearm application." PS § 5-121(a). The MSP "shall disapprove" your application if it "determines that [you] supplied false information or made a false statement" on it.[9] PS § 5-122(a)(1). So, if you have a "disqualifying crime" lurking in your past but represent

(vi) is not addicted to a controlled dangerous substance or is not a habitual user;

(vii) does not suffer from a mental disorder as defined in § 10-101(i)(2) of the Health--General Article and have a history of violent behavior against the firearm applicant or another;

(viii) has never been found incompetent to stand trial under § 3-106 of the Criminal Procedure Article;

(ix) has never been found not criminally responsible under § 3-110 of the Criminal Procedure Article;

(x) has never been voluntarily admitted for more than 30 consecutive days to a facility as defined in § 10-101 of the Health--General Article;

(xi) has never been involuntarily committed to a facility as defined in § 10-101 of the Health--General Article;

(xii) is not under the protection of a guardian appointed by a court under § 13-201(c) or § 13-705 of the Estates and Trusts Article, except for cases in which the appointment of a guardian is solely a result of a physical disability;

(xiii) is not a respondent against whom:
    1. a current non ex parte civil protective order has been entered under § 4-506 of the Family Law Article; or
    2. an order for protection, as defined in § 4-508.1 of the Family Law Article, has been issued by a court of another state or a Native American tribe and is in effect; and

(xiv) if under the age of 30 years at the time of application, has not been adjudicated delinquent by a juvenile court for an act that would be a disqualifying crime if committed by an adult[.]

[9] The MSP must also disapprove your application if it determines that your "application [was] not properly completed" or if your attending physician notifies the MSP that you suffer "from a mental disorder and [are] a danger to [yourself] or to another." PS § 5-122(a)(2), (3). Neither of those provisions is at issue here.

otherwise on your application, the MSP will have at least two reasons to disapprove your application: (1) you committed a disqualifying crime, PS § 5-133(b)(1); and (2) you "supplied false information or made a false statement" on your application, PS § 5-122(a)(1).

The MSP has only seven days from receipt of the application to disapprove the application. PS § 5-122(b)(1); *see also* COMAR 29.03.01.13A. If the MSP disapproves the application, it must notify the seller in writing within the seven-day period, and then it must notify you. PS § 5-122(b)(1), (2). But no news is good news: If the MSP does not disapprove your application within the seven-day waiting period, you have 90 days to buy your firearm.[10] PS § 5-123(b).

Now that you've bought a handgun, if you want "to carry, wear, or transport" it, you will need to apply to the MSP for a "permit." PS § 5-301(c); *see also* PS § 5-303. As with the HQL and firearm application, the MSP must deny your permit application if you have been convicted of a "disqualifying crime." PS § 5-306(a)(10)(ii).

To sum up: (1) To be eligible to buy a handgun, you must obtain an HQL; (2) to buy a specific handgun, you must submit a firearm application and wait seven days; if not disapproved within that time, you have 90 days to complete the transaction; and (3) to wear, carry, or transport your handgun, you need to apply for and receive a permit. All three

---

[10] PS § 5-125(b) mentions the possibility of the MSP putting an application on hold when there is an open disposition of criminal proceedings against the applicant. However, neither the firearms statutes nor the regulations explicitly state that the MSP may put an application on hold or provide additional detail as to when the MSP may do so. In any event, the issue of putting an application on hold is not before us.

5

government-issued approvals must be denied if you have a conviction for a disqualifying crime on your record. This case is about the disapproval of the second application: the firearm application.

B

Petitioner Mark McCloy obtained an HQL in 2015 and subsequently purchased four handguns. On February 8, 2021, he submitted a firearm application to buy another handgun.[11] He stated on his application that he had never been convicted, in Maryland or elsewhere, of a misdemeanor that, under Maryland law, carries a maximum penalty of more than two years. As previously noted, a misdemeanor carrying such a sentence is a disqualifying crime under PS § 5-101(g)(3).

The MSP's criminal background check revealed that, in 1999, Mr. McCloy had been charged with witness tampering under 18 U.S.C. § 1512(b) but was convicted, following a guilty plea, under 18 U.S.C. § 1512(c)(1).[12] The MSP determined that 18 U.S.C. § 1512(c)(1) was a disqualifying crime and timely informed the licensee and Mr. McCloy that it disapproved his application. The notice provided no explanation, but in an informal email exchange that followed, the MSP told Mr. McCloy that 18

---

[11] Before the Appellate Court of Maryland, Mr. McCloy argued that the MSP's 2015 approval of his HQL application precluded the MSP from denying his 2021 firearm application. *In re McCloy*, 257 Md. App. 668, 698-99 (2023). The Appellate Court rejected that argument, *id.*, and it is not before us.

[12] That provision is now located at 18 U.S.C. § 1512(d) and has identical language to the 1999 version, except that the maximum term of imprisonment is now three years. When referring to 18 U.S.C. § 1512(c) in this opinion, we are referring to the 1999 version.

6

U.S.C. § 1512(c)(1) was disqualifying because it was comparable to a disqualifying crime in Maryland—MD. CODE ANN., CRIM. LAW ("CR") § 9-302 (2002, 2021 Repl. Vol.).

C

An aggrieved applicant has 30 days after receipt of the disapproval notice to request a hearing before the MSP. PS § 5-126(a)(1). The hearing must be conducted under the contested case provisions of Title 10, Subtitle 2 of the State Government Article. PS § 5-126(b); *see also* MD. CODE ANN., STATE GOV'T ("SG") § 10-202(d) (1984, 2021 Repl. Vol.).[13] The Office of Administrative Hearings ("OAH") conducts the hearing. SG §§ 10-202(f), 10-205(a)(1). The hearing's presiding officer, an Administrative Law Judge ("ALJ"), reviews "all information available to the [MSP] which formed the basis for the decision to disapprove the application, as well as any additional information that may be required by the State, the [ALJ], or other sources." COMAR 29.03.01.22E. Unless otherwise provided by law, the MSP must establish by a preponderance of the evidence that the disapproval was proper. SG § 10-217; COMAR 28.02.01.21K(1); COMAR 29.03.01.22H.

---

[13] Under SG § 10-202(d), a "[c]ontested case" means:

[A] proceeding before an agency to determine:
> (i) a right, duty, statutory entitlement, or privilege of a person that is required by statute or constitution to be determined only after an opportunity for an agency hearing; or
> (ii) the grant, denial, renewal, revocation, suspension, or amendment of a license that is required by statute or constitution to be determined only after an opportunity for an agency hearing.

7

Mr. McCloy timely appealed the MSP's decision to the OAH. Two days before the hearing, the MSP told him that, for purposes of determining whether his conviction under 18 U.S.C. § 1512(c)(1) was disqualifying, the MSP was comparing it to CR § 9-305,[14] not CR § 9-302. Mr. McCloy did not object to the timing of that notice.

---

[14] CR § 9-305 states:

### Prohibited--In general

(a) A person may not, by threat, force, or corrupt means, try to influence, intimidate, or impede a juror, a witness, or an officer of a court of the State or of the United States in the performance of the person's official duties.

### Prohibited--Solicitation

(b) A person may not solicit another person to, by threat, force, or corrupt means, try to influence, intimidate, or impede a juror, a witness, or an officer of the court of the State or of the United States in the performance of the person's official duties.

### Penalty

(c) (1) Except as provided in paragraph (2) of this subsection, a person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 10 years or a fine not exceeding $5,000 or both.
(2) If an act described in subsection (a) of this section is taken in connection with a proceeding involving a felonious violation of Title 5 of this article or the commission of a crime of violence as defined in § 14-101 of this article, or a conspiracy or solicitation to commit such a crime, a person who violates this section is guilty of a felony and on conviction is subject to imprisonment not exceeding 20 years.

### Sentencing

(d) A sentence imposed under this section may be separate from and consecutive to or concurrent with a sentence for any crime based on the act establishing the violation of this section.

8

At the hearing, the MSP explained that in determining whether an out-of-State conviction disqualifies an applicant, it first determines whether Maryland has an equivalent statute and if so, whether that statute meets the definition of "disqualifying crime." The MSP then compares the elements of the out-of-State statute with the elements of the potentially equivalent Maryland crime, but it does not consider the facts supporting the conviction. Here, the MSP consulted counsel from the Attorney General's office in determining that CR § 9-305 was the appropriate equivalent Maryland crime. In both the testimony and argument phases of the hearing, the MSP maintained that the facts behind the out-of-State conviction are irrelevant to the analysis.

In response, Mr. McCloy submitted an affidavit from the attorney who handled his 1999 federal case, explaining the factual circumstances of that matter, a subject Mr. McCloy also covered in his testimony. According to Mr. McCloy, the charges against him stemmed from a sexual encounter that he, then a government employee, had with a coworker. The coworker filed a sexual harassment complaint with the Equal Employment Opportunity Commission ("EEOC"). In a conversation tape-recorded by the FBI, Mr. McCloy agreed to pay the coworker to dismiss the complaint. Mr. McCloy was arrested and subsequently charged with 18 U.S.C. § 1512(b)—a felony that carried a maximum penalty of ten years' imprisonment. Ultimately, Mr. McCloy pleaded guilty to 18 U.S.C. § 1512(c)(1), a misdemeanor that had a maximum penalty of no more than one year's imprisonment. Mr. McCloy was fined $2,000 and sentenced to six months of home detention and five years of probation.

In addition to introducing evidence explaining the factual circumstances of his conviction, Mr. McCloy also argued that 18 U.S.C. § 1512(c)(1) was not comparable or equivalent to CR § 9-305, either on the elements or when the facts were considered. Mr. McCloy argued that, as a matter of law, CR § 9-305 could not be comparable to 18 U.S.C. § 1512(c)(1) because CR § 9-305 was not enacted until *after* his federal conviction.[15]

In a ten-page decision, the ALJ affirmed the MSP's disapproval of Mr. McCloy's application, but on different grounds. Looking only at the elements of the federal and Maryland statutes, the ALJ agreed with Mr. McCloy that 18 U.S.C. § 1512(c)(1) was *not* comparable to CR § 9-305, but sua sponte determined that it *was* comparable to CR § 9-306, which is also disqualifying under PS § 5-101(g)(3). The ALJ also found that Mr. McCloy's application falsely represented that he had not been convicted "in Maryland or elsewhere of a misdemeanor which, under Maryland law, carries a maximum penalty of more than two years."[16] This misrepresentation, the ALJ concluded, also justified the disapproval of Mr. McCloy's application.

---

[15] Mr. McCloy argued additional points as well; none are relevant to our analysis.

[16] The MSP did not raise this issue before the ALJ.

D

Mr. McCloy sought judicial review in the Circuit Court for Queen Anne's County, which affirmed the ALJ's decision in a written opinion.[17] And just as the ALJ affirmed the MSP's decision, but on different grounds than the MSP, the circuit court affirmed the ALJ's decision, but on a different ground than the ALJ. The circuit court agreed with Mr. McCloy "that the ALJ exceeded her statutory authority in finding that Section 9-306 was the analogous statute, and in doing so violated his procedural due process [rights] to notice and an opportunity to be heard." The court then determined that the ALJ erroneously found that Mr. McCloy had made a false statement on his application. Those determinations were uncontested by the MSP on appeal and are therefore not before us.

But the circuit court came full circle and held that the MSP correctly identified CR § 9-305 as an appropriate equivalent crime to 18 U.S.C. § 1512(c)(1), reasoning that both seek "to prevent any person from interfering or otherwise impeding another person's participation in official proceedings." So, despite rejecting the ALJ's reasoning, the court affirmed the ALJ's ultimate disposition.

E

Mr. McCloy timely noted an appeal to the Appellate Court of Maryland, which affirmed in a reported decision. *In re McCloy*, 257 Md. App. 668 (2023). Mr. McCloy argued that because his federal conviction occurred in 1999, that crime could not be

---

[17] McCloy was entitled to judicial review under PS § 5-127, which states that "[a]ny subsequent judicial review shall be held in accordance with Title 10, Subtitle 2 of the State Government Article." Under this subtitle, "a party who is aggrieved by the final decision in a contested case" may seek "judicial review of the decision[.]" SG § 10-222(a).

compared to CR § 9-305, which was not enacted until 2002. *McCloy*, 257 Md. App. at 685-86. The court rejected this argument, holding that the out-of-State crime should be compared to the equivalent Maryland offense in effect at the time of the application. *Id.* at 686-89.

Mr. McCloy next argued that his federal crime was not equivalent to CR § 9-305. *Id.* at 690. The court also rejected this argument. *Id.* at 696-97. Looking to *Brown v. Handgun Permit Review Board*, 188 Md. App. 455 (2009), the court fashioned a two-step approach to determine whether a non-Maryland statute is disqualifying. *McCloy*, 257 Md. App. at 692-93. We provide more specifics on this approach later. In short, the court's approach involves comparing the elements of the Maryland and non-Maryland statutes and then determining whether a "reasonable mind" could conclude that the statutes prohibit similar conduct, based on the elements of the statutes and the conduct underlying the applicant's out-of-State conviction. *Id.* at 693. Using this approach, the court concluded that Mr. McCloy's 1999 federal crime was equivalent to CR § 9-305 and was therefore a disqualifying crime. *Id.* at 696-97. As a result, the court upheld the ALJ's affirmance of the MSP's disapproval of Mr. McCloy's firearm application. *Id.*

F

We granted Mr. McCloy's petition for writ of certiorari. *In re McCloy*, 485 Md. 133 (2023). He presents four questions for our review, which we have distilled into one:

> Did the ALJ properly determine that Mr. McCloy's 1999 conviction under 18 U.S.C. § 1512(c)(1) was a disqualifying crime requiring disapproval of his firearm application?

12

II

A

An aggrieved firearm applicant's right to judicial review is authorized by PS § 5-127: "Any subsequent judicial review shall be held in accordance with Title 10, Subtitle 2 of the State Government Article." Judicial review is limited to the ALJ's final decision.[18] *See* SG § 10-222(a)(1) ("[A] party who is aggrieved by the final decision in a contested case is entitled to judicial review of the decision as provided in this section.").

Here, the ALJ agreed with Mr. McCloy that 18 U.S.C. § 1512(c)(1) is not equivalent to CR § 9-305 for disqualification purposes, but it affirmed the MSP's decision on alternative grounds, none of which are before us. So, if the ALJ correctly determined that CR § 9-305 is not equivalent to 18 U.S.C. § 1512(c)(1), then the ALJ's affirmance of the MSP's decision was *incorrect*.

The standard of review of an agency's final decision in a contested case is set forth in SG § 10-222(h).[19] The primary issue here—whether Mr. McCloy's conviction in 1999

---

[18] *See also* COMAR 28.02.01.25D ("Except as otherwise provided by law, when an ALJ is the final decision maker, the ALJ's decision is the final agency decision for purposes of judicial review."); *Motor Vehicle Admin. v. Smith*, 458 Md. 677, 685 (2018).

[19] SG § 10-222(h) states:

In a proceeding under this section, the court may:
    (1) remand the case for further proceedings;
    (2) affirm the final decision; or
    (3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:
        (i) is unconstitutional;

13

under 18 U.S.C. § 1512(c)(1) is equivalent to a conviction under CR § 9-305 for disqualification purposes under PS § 5-133(b)—involves the interpretation and application of Maryland statutes and caselaw which, as issues of law, are reviewed without deference. *Motor Vehicle Admin. v. Smith*, 458 Md. 677, 686 (2018). But we "give weight to the administrative agency's interpretation and application of the statute that the agency administers." *Id.* (citation omitted). That said, we do not credit an agency's erroneous interpretation of a statute. *Md. Ins. Admin. v. State Farm Mut. Auto. Ins. Co.*, 451 Md. 323, 335 (2017). An agency decision tainted by an error of law is subject to reversal or modification. SG § 10-222(h)(3)(iv).

B

Mr. McCloy argues that "it is a legal impossibility for [his] conduct or conviction to constitute a prohibiting offense in Maryland, when [he] could not have been, *under any circumstances*, charged for a violation of § 9-305 in Maryland in 1999." That's because he was convicted in 1999, but CR § 9-305 went into effect in 2002. So, he argues, "[a]s there did not exist an equivalent offense in Maryland at the time of his conduct, holding to the

---

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;
(iii) results from an unlawful procedure;
(iv) is affected by any other error of law;
(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted;
(vi) in a case involving termination of employment or employee discipline, fails to reasonably state the basis for the termination or the nature and extent of the penalty or sanction imposed by the agency; or
(vii) is arbitrary or capricious.

14

contrary, would violate [his] rights to effective assistance of counsel and due process" under both the United States Constitution and Maryland's Declaration of Rights, given that he was not informed that his guilty plea could later cause a forfeiture of a constitutional right.

The MSP contends that the Appellate Court correctly determined that only the Maryland statutes in effect at the time of the application may be considered in the disqualifying crime analysis. We agree.[20]

Our conclusion rests on a foundation first articulated by the Attorney General of Maryland in 2006 and later embraced by both this Court and the Appellate Court of Maryland. 91 Op. Att'y Gen. 68, 68-80 (Md. 2006). As noted above, PS § 5-133(b)(1) prohibits a person convicted of a "disqualifying crime" from possessing a regulated firearm. A "disqualifying crime" includes "a violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years." PS § 5-101(g)(3). In 2006, in response to questions posed by the MSP, the Attorney General opined that: (1) A "disqualifying crime" includes an out-of-State conviction if the offense "would be classified as a misdemeanor in Maryland with a potential penalty under Maryland law in excess of two years imprisonment"; and (2) "the determination as to whether a particular misdemeanor 'carries' a penalty in excess of two years should be made with reference to

---

[20] Regarding Mr. McCloy's due process argument, the MSP argues that it would have been impossible for Mr. McCloy to have been informed in 1999 that his guilty plea for a federal crime would result in the denial of a firearm application in Maryland over 20 years later. The MSP further argues that, regardless, the alleged due process violation could have tainted only his federal conviction, not his later attempt to purchase a regulated firearm. We agree with the MSP and reject Mr. McCloy's due process argument.

the penalty at the time of possession,[21] if it is different from the potential penalty at the time of conviction." 91 Op. Att'y Gen. at 68.

The Attorney General's opinion was tested five years later in *Maryland State Police v. McLean*, 197 Md. App. 430 (2011). In 1983, McLean was convicted of breaking and entering a storehouse. *Id.* at 433. At that time, the maximum sentence was at most six months, which did not constitute a disqualifying crime. *Id.* But when McLean applied to renew his carry permit in 2008, the offense had been changed to a misdemeanor and carried a maximum sentence of more than two years, which *is* disqualifying. *Id.* at 436. McLean argued that, in determining whether an offense is a "disqualifying crime" under PS § 5-101(g)(3), one should look to the penalty in effect at the time of the conviction, not at the time of the application. *See id.* at 437. The MSP disagreed and determined that the date of the renewal application, not the conviction, mattered in the disqualification analysis.

Adopting the Attorney General's reasoning, the Appellate Court agreed. As the court observed, PS § 5-101(g)(3) was drafted in the present tense, stating that "a violation classified as a misdemeanor in the State that *carries* a statutory penalty of more than two years" is disqualifying. *Id.* at 440. The court reasoned that if the General Assembly had intended to apply the penalty at the time of the conviction, it would have included language stating so in PS § 5-101(g)(3). *Id.* at 440-41. The court found nothing in the legislative history that pointed to a contrary interpretation. *Id.* at 441-43. Because the court recognized

---

[21] The Attorney General reasoned that this determination was justified "[b]ecause the firearms law regulates the current possession or reception of a firearm[.]" 91 Op. Att'y Gen. at 68.

16

that "firearms laws are intended to regulate the current or present possession of regulated firearms[,]" it concluded that "[l]ooking to current Maryland law and the penalties currently in force promotes consistency and equality in the treatment of all persons convicted of the same criminal conduct regardless of *where* or *when* the criminal conduct occurred." *Id.* at 449.

The issue here is a variation of the one addressed in *McLean*, with three notable but inconsequential differences. *First*, in *McLean*, the applicant was denied a carry permit; here, Mr. McCloy was denied approval to purchase a handgun. But in both cases, the reason for the denial was the same: The MSP determined that the applicant had committed a "disqualifying crime." So, this distinction is immaterial here.

*Second*, in *McLean*, the applicant was convicted under a Maryland statute; here, Mr. McCloy was convicted under a federal statute. That too is immaterial because, as we held in *McCloud v. Department of State Police, Handgun Permit Review Board*, 426 Md. 473, 487 (2012), an out-of-State conviction is disqualifying if there an "equivalent offense in Maryland." Our goal was to treat in-State and out-of-State crimes consistently. *Id.* at 484-85. A conviction under a federal statute *is* an out-of-State crime.

And *third*, in *McLean*, the issue was whether the disqualification analysis applies to the penalty at the time of the conviction or at the time of the application; here, for equivalency purposes, the issue is whether we look to Maryland crimes at the time of the conviction or at the time of the application. This distinction too is immaterial because, at bottom, both cases raise the same temporal question of law: Do we apply the law in effect *then* or the law in effect *now*?

17

The Appellate Court determined that it's the latter, *McCloy*, 257 Md. App. at 689, and we agree. As the court in *McLean* observed, PS § 5-133(b) regulates "the current or present possession of regulated firearms." 197 Md. App. at 449. The Attorney General correctly noted that the General Assembly may expand the list of disqualifying offenses and thereby convert a lawful possession to an unlawful possession. 91 Op. Att'y Gen. at 79. We agree with the Appellate Court that applying the law in effect at the time of the application "promotes consistency and equality in the treatment of all persons convicted of the same criminal conduct[,] regardless of *where* or *when* the criminal conduct occurred." *McCloy*, 257 Md. App. at 688 (alteration in original) (quoting *McLean*, 197 Md. App. at 449). Put another way, if you want to buy a handgun *today*, what matters is the General Assembly's assessment *today* of which crimes are disqualifying. So, for comparison purposes, we look to Maryland law at the time the firearm application was filed, not at the time of the conviction.

C

As noted above, in *McCloud*, this Court held that an out-of-State conviction is disqualifying if there is an "equivalent offense in Maryland." 426 Md. at 487. But there, we did not take the additional step of explaining how equivalency is determined in this context; nor have we done so until now. To make this determination, Mr. McCloy urges us to adopt the United States Supreme Court's "categorical approach," under which the elements of the out-of-State offense must be "no broader than the elements" of the comparable Maryland offense. Using that approach, Mr. McCloy argues, CR § 9-305 is not comparable to 18 U.S.C. § 1512(c)(1) because the elements of the latter encompass a

18

broader range of conduct than the former. Mr. McCloy adds that the same result obtains if the facts behind his 1999 conviction are considered.

In contrast, the MSP defends the two-step analysis adopted by the Appellate Court and argues that because "substantial evidence exists to support the conclusion that Mr. McCloy had been convicted of a 'disqualifying crime,' the Appellate Court correctly affirmed." MSP further argues that 18 U.S.C. § 1512(c)(1) and CR § 9-305 are equivalent because they share a common purpose and elements.

1

Our task is essentially one of statutory construction, the goal of which is to understand and implement the General Assembly's intent. *Westminster Mgmt., LLC v. Smith*, 486 Md. 616, 644-45 (2024). We begin our analysis with the text of the relevant provisions and interpret the same in the context of the overall statutory scheme. *Id.* If the text is unambiguous, we apply the plain meaning, and our inquiry is over. *Id.* at 645. If the statute is ambiguous, we may examine the legislative history to ascertain the General Assembly's intent. *Id.*

Here, the relevant statute provides that "a person may not possess a regulated firearm if the person . . . has been convicted of a disqualifying crime[.]" PS § 5-133(b)(1). As noted above, a "[d]isqualifying crime" means "a crime of violence," a "violation classified as a felony in the State," or "a violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years." PS § 5-101(g). If the MSP's investigation uncovers a prior Maryland conviction on the applicant's record, the MSP's task in determining whether the prior conviction is disqualifying is straightforward. After

19

verifying the specific crime of which the applicant was convicted, the MSP will check the relevant provisions of the Maryland Code to determine whether the offense is either a crime of violence under PS § 5-101(c), a felony, or a misdemeanor with a statutory maximum penalty of more than two years of imprisonment. If the crime fits within any of those classifications, then it is disqualifying under PS § 5-101(g).

If the MSP's investigation uncovers a prior conviction under an out-of-State law on the applicant's record, the MSP's process is the same, but with one additional, preliminary step: The MSP must determine whether the applicant was convicted of an offense that would be disqualifying had it been committed in Maryland. *McCloud*, 426 Md. at 487. Although not entirely sufficient, the categorical approach advocated by Mr. McCloy is an appropriate starting point for making this determination.

The categorical approach was articulated by the United States Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990), a case involving the Armed Career Criminal Act, 18 U.S.C. § 924(e). Under that act, defendants with three prior convictions "for a violent felony" are subject to increased sentences. *Taylor*, 495 U.S. at 575-78. A "violent felony" includes "burglary, arson, or extortion[.]" *Id.* at 578. Burglary, arson, and extortion are generic descriptions of commonly understood offenses. *Descamps v. United States*, 570 U.S. 254, 257 (2013). To determine whether a crime was a "violent felony" under the act, courts had to determine whether a prior conviction fit within one of those generic crimes. Depending on how a state defines one of those crimes, that's not always a straightforward task.

20

The Supreme Court fashioned a "formal categorical approach" to make this determination. *Taylor*, 495 U.S. at 600. Under that approach, courts "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime[.]" *Descamps*, 570 U.S. at 257. "The prior conviction qualifies as an [Armed Career Criminal Act] predicate only if the statute's elements are the same as, or narrower than, those of the generic offense." *Id.*

To import the categorical approach into the MSP's decisional process in the context presented here, an out-of-State offense would be equivalent to a Maryland disqualifying crime if the elements of the former are the same as or narrower than any crime that is "disqualifying" under PS § 5-101(g). If this categorical analysis demonstrates that the out-of-State statute is equivalent to a Maryland disqualifying crime, then the out-of-State crime is also disqualifying, and the analysis ends there.

But if the elements of the out-of-State crime are broader than the Maryland crime, then the analysis is not over because, depending on the information available to the MSP, the MSP may yet determine that the applicant was convicted of an offense that satisfies all the elements of a disqualifying Maryland crime under PS § 5-101(g). To illustrate this point, assume the applicant has a prior conviction under CR § 3-307(a)(5), which prohibits a person from "engag[ing] in vaginal intercourse with another if the victim is 14 or 15 years old, and the person performing the act is at least 21 years old." Under subsection (b), "[a] person who violates [section 3-307] is guilty of the felony of sexual offense in the third degree and on conviction is subject to imprisonment not exceeding 10 years." Thus, CR § 3-307(a)(5) is a disqualifying crime under PS § 5-101(g) in two ways: (1) as a crime

21

of violence under PS § 5-101(c)(15); and (2) as "a violation classified as a felony in [Maryland]" under PS § 5-101(g)(2). The MSP would have no choice but to disapprove the application.

Now assume the applicant has a prior conviction under a statute of another state which has the same elements as CR § 3-307(a)(5), but with one exception: The out-of-State statute requires that the victim be younger than 17 years old. This hypothetical out-of-State statute is broader than CR § 3-307(a)(5) because under the out-of-State statute, the victim can be *anyone* under the age of 17, but under the Maryland statute, the victim must be either 14 or 15 years old. If it used just the categorical approach, the MSP would have no basis to conclude that the applicant was convicted of a disqualifying crime.

Now let's take the same hypothetical and assume that the applicant's out-of-State conviction was based on a written plea agreement. Assume also that during its investigation the MSP obtains an authentic copy of the plea agreement, and in it the applicant stipulated that, when he committed the offense, he was 21 years old and the victim was 14 years old. Recall that the MSP's task under PS § 5-133(b)(1) is to determine whether the applicant "has been convicted of a disqualifying crime[.]" Under this scenario, with the applicant's plea agreement in hand, the MSP would be correct to conclude that the applicant was convicted of engaging in vaginal intercourse with a 14 year old victim, which is a crime under CR § 3-307(a)(5) and therefore disqualifying under PS § 5-101(g). In that scenario, the MSP would be constrained to conclude that the applicant was "convicted of a disqualifying crime" and disapprove the application on that basis.

22

Applying this test, we agree with the ALJ that Mr. McCloy's 1999 conviction under 18 U.S.C. § 1512(c)(1) was not equivalent to a conviction under CR § 9-305.[22] For starters, the categorical approach does not resolve the inquiry because the elements of 18 U.S.C. § 1512(c)(1) are broader than those of CR § 9-305. A side-by-side comparison shows why:

| **Elements of the Offenses** | |
|---|---|
| 18 U.S.C. § 1512(c)(1) | CR § 9-305 |
| A person can be convicted of this offense when they: | |
| 1. Intentionally harass another; and | 1. Use threat, force, or corrupt means; |
| 2. Thereby hinder, delay, prevent, or dissuade; | 2. To try to influence, intimidate, or impede; |
| 3. Any person; | 3. A juror, witness, or an officer of a court of the State or of the United States; |
| 4. From attending or testifying in an official proceeding. | 4. In the performance of the person's official duties. |

As this table shows, the third and fourth elements of 18 U.S.C. § 1512(c)(1) sweep more broadly than the counterpart elements of CR § 9-305. Under 18 U.S.C. § 1512(c)(1), the object of the defendant's conduct can be "any person," but under CR § 9-305, the object of the defendant's conduct must be a "juror, witness, or an officer of a court of the State or of the United States." *See also United States v. Risken*, 788 F.2d 1361, 1368 (8th Cir. 1986) (holding that 18 U.S.C. § 1512 encompassed different conduct than 18 U.S.C. § 1503

---

[22] In 1999, 18 U.S.C. § 1512(c)(1) provided that "[w]hoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from . . . attending or testifying in an official proceeding . . . or attempts to do so, shall be fined under this title or imprisoned not more than one year, or both."

because the former protects "any person," while the latter protects only witnesses, jurors, and court officers).

Further, 18 U.S.C. § 1512(c)(1) applies when the proceeding at issue is an "official proceeding," which includes not just federal court proceedings, but also "a proceeding before the Congress" and "a proceeding before a Federal Government agency which is authorized by law[.]" 18 U.S.C. § 1515(a)(1). CR § 9-305, however, applies to judicial proceedings. *See State v. Pagano*, 341 Md. 129, 133-39 (1996) (interpreting CR § 9-305's statutory predecessor as "prohibit[ing] only actions aimed at obstructing or impeding a judicial proceeding"); *see also State v. Wilson*, 471 Md. 136, 163 (2020) ("[I]t is quite clear that the corrupt act, or one of threat or force, employed to influence or intimidate or impede any such juror, witness or officer in the discharge of his [or her] duty *in a court*, must necessarily be, also, an endeavor to obstruct or impede in such court the due administration of justice." (emphasis added) (alteration in original) (quoting *Romans v. State*, 178 Md. 588, 592 (1940))).

Because the categorical approach does not resolve the inquiry, we next consider whether there was conclusive evidence that Mr. McCloy was convicted of having committed acts that establish all the elements of CR § 9-305. We note initially that the MSP had no information about the facts supporting Mr. McCloy's 1999 conviction when it made its decision to disapprove his application. Such information was, however, put before the

ALJ by Mr. McCloy.[23] Even if fully credited, however, Mr. McCloy's factual account does not establish that he was convicted of an offense that would support a conviction under CR § 9-305.

As discussed above, the only evidence before the ALJ was that Mr. McCloy was convicted of tampering with a potential witness in an EEOC proceeding. As discussed above, CR § 9-305 only applies to judicial proceedings. For that reason alone, then, the conduct forming the basis of Mr. McCloy's 1999 conviction could not have resulted in a conviction of CR § 9-305, even if such conduct had occurred in Maryland. Thus, the ALJ correctly determined that Mr. McCloy's conviction under 18 U.S.C. § 1512(c)(1) was not equivalent to a conviction under CR § 9-305 and was therefore not disqualifying on that basis.

3

We will briefly explain why we prefer the approach articulated above over the two-step test adopted by the Appellate Court. Under the Appellate Court's test, the first step is to compare the elements of the out-of-State crime with the elements of the Maryland crime. *McCloy*, 257 Md. App. at 693. In this step, the relevant penalty for the comparable Maryland statute is the one in effect at the time of the application, not at the time of the out-of-State conviction. *Id.*

---

[23] Even though Mr. McCloy introduced such evidence at the OAH hearing, the ALJ did not consider this information in its decision. In that regard, the ALJ is required to consider "all information available to the [MSP] which formed the basis for the decision to disapprove the application, as well as any additional information that may be required by the State, the [ALJ], or other sources." COMAR 29.03.01.22E.

If the elements of the two statutes are comparable, the second step under the Appellate Court's test is to determine "whether a reasonable mind could conclude that the out-of-[S]tate and Maryland statutes prohibit similar conduct, based upon a comparison of the elements of the respective statutes." *Id.* The Appellate Court noted that "[i]n that context, we determine if a reasonable mind, in the position of the authority determining whether the out-of-[S]tate conviction is a disqualifying crime, could conclude that the conduct producing the applicant's out-of-[S]tate conviction could be considered prohibited by the purportedly 'equivalent' Maryland statute." *Id.* If the two statutes prohibit similar conduct, then they are equivalent; if the out-of-State crime is equivalent to a disqualifying Maryland statute, then the former is also disqualifying. *Id.* The outcome of this exercise is reviewed under the substantial evidence test. *Id.* at 696.

Our concern with the Appellate Court's two-part test stems from its inherently subjective nature. *First*, there is no standard for determining whether the two statutes prohibit "similar" conduct. We can use Venn diagrams to illustrate this point. In the diagrams below, two statutes are represented by circles that capture the universe of their prohibited conduct. The shaded areas depict the conduct prohibited by both statutes—that is, the overlap of the two statutes. If two statutes do not prohibit any of the same conduct, the diagram would look like this:



But if two statutes prohibit some, but not all, of the same conduct, the diagram could look like this:



Or this:



Or even this:



As these diagrams illustrate, the Appellate Court's similarity prong invites the question: Just how much similarity or overlap is necessary to establish equivalency? One person might conclude that a 45 percent overlap is similar enough; another might say 65 percent is the appropriate threshold.[24] Like beauty, similarity is in the eye of the beholder.

*Second*, by asking whether a reasonable person could conclude that the conduct "could be considered prohibited by the purportedly 'equivalent' Maryland statute[,]" and

---

[24] Of course, when comparing two statutes, it is unlikely that one could mathematically determine the extent to which the prohibited conduct of two statutes overlap. But if anything, that additional level of complexity renders the "similarity" analysis even more difficult and subjective.

subjecting that determination to a substantial evidence test on judicial review, *id.* at 693, it appears that the Appellate Court's test would invite the MSP to consider and determine disputed facts underlying the out-of-State conviction. To illustrate the point, assume that the applicant was convicted under the same out-of-State statute as in our hypothetical above. This time, however, assume that the conviction resulted not from a guilty plea in which the defendant admitted to the underlying facts, but instead from a jury trial, and assume further that the MSP does not have access to any document that conclusively identifies the facts underlying the conviction. Suppose that there was different testimony as to the age of the victim: One witness testified that the victim was 15 at the time of the offense, while another witness testified that the victim had just recently turned 16. The jury would not have had to resolve that factual dispute because, either way, the evidence before the jury conclusively established that the victim was under the age of 17, which was all that was required to convict under our hypothetical out-of-State statute. But that factual dispute *is* relevant to the equivalency analysis because the Maryland statute requires the victim to be either 14 or 15 years old. So, if the victim was 16, the applicant could not have been convicted under the Maryland statute. The second step of the Appellate Court's test, as we understand it, allows for the MSP to act as a factfinder to resolve conflicting evidence about the victim's age. Thus, two reasonable minds weighing the same evidence could reach different conclusions, both of which could be affirmed on judicial review under the substantial evidence test. We see no basis in the text of the statute to conclude that the General Assembly intended to assign the MSP such a factfinding task.

28

# III

In sum, we hold that the relevant Maryland law in determining whether an out-of-State crime is equivalent to a disqualifying crime in Maryland under PS § 5-101(g) is the law in effect when the application is submitted. To determine whether a conviction under an out-of-State law constitutes a conviction for a disqualifying crime, the MSP should first determine whether the elements of the out-of-State crime of which the applicant was convicted are the same as or narrower than any Maryland crime that is disqualifying under PS § 5-101(g). If the answer to that question is *yes*, then the applicant's out-of-State conviction is likewise disqualifying. If the answer to that question is *no*, and if the MSP has a sufficient basis to conclusively determine the acts of which the applicant was convicted, then the MSP should determine whether such acts would support a conviction under a disqualifying Maryland crime. Applying that test here, we hold that based on the information available to the ALJ, Mr. McCloy was not convicted of a disqualifying crime. Therefore, the ALJ should have reversed the MSP's disapproval of Mr. McCloy's firearm application.

Accordingly, this case shall be remanded to the Appellate Court of Maryland, and then from the Appellate Court to the circuit court, and then from the circuit court to the OAH, with instructions to reverse the MSP's disapproval of Mr. McCloy's firearm application.

**JUDGMENT OF THE APPELLATE COURT OF MARYLAND IS REVERSED. CASE REMANDED TO THAT COURT WITH REMAND INSTRUCTIONS AS OUTLINED**

29

**ABOVE. COSTS TO BE PAID BY RESPONDENT.**